657 F.2d 800
 64 A.L.R.Fed. 783
 Edward HELMS, Individually and on behalf of his minor child,
Alice Dawn Helms, Plaintiffs-Appellants,
v.
Dr. Charles McDANIEL, Individually and in his official
capacity as Superintendent of the Georgia State
Board of Education, et al., Defendants-Appellees.
 No. 81-7111
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Unit B*
 Oct. 2, 1981.
 Brant Jackson, Jr., Atlanta, Ga., for plaintiffs-appellants.
 Alfred L. Evans, Sr. Asst. Atty. Gen., Atlanta, Ga., Jones, Cork, Miller & Benton, Wallace W. Plowden, Jr., Frank L. Butler, III, Macon, Ga., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before TJOFLAT, VANCE and THOMAS A. CLARK, Circuit Judges.
 VANCE, Circuit Judge:
 
 
 1
 This case involves a challenge to the procedures by which the state of Georgia has attempted to comply with the requirements of the Education for All Handicapped Children Act (EHA), 20 U.S.C. §§ 1401 et seq., and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Both parties stipulated that the action be tried on the basis of pleadings, exhibits and memoranda of law and filed motions for summary judgment. The district court denied plaintiffs' motion and awarded summary judgment to defendants.
 
 
 2
 Our discussion focuses upon the provisions of the EHA since compliance with the detailed prescriptions of that statute satisfies section 504 as well. 34 C.F.R. § 104.36. Before determining whether the hearings afforded parents and students by the state of Georgia comport with the requirements of the Act, it is useful to review briefly the role of these hearings in the statutory scheme.
 
 
 3
 The EHA established a program of federal assistance to the states to assist them in educating handicapped children. Receipt of federal funds was conditioned upon provision of "a free appropriate public education" to all handicapped children.
 
 
 4
 Congress did not attempt to define an appropriate education for children with a vast variety of handicaps. Instead, Congress recognized that each handicapped child faces unique difficulties demanding unique solutions. Congress thus decided that an appropriate education should be defined individually with each child. This definition is embodied in the child's Individualized Education Program (IEP), a document developed by parents and educators which states, among other things, the objectives of the child's program and the services which will achieve them. 20 U.S.C. § 1401(18) & (19).
 
 
 5
 To insure that the IEP would in fact provide an appropriate education, Congress created a detailed system of procedural safeguards through which parents and children could enforce their rights under the Act.[1] These safeguards include the right to an "impartial due process hearing" when parents are dissatisfied with their child's IEP. 20 U.S.C. § 1415(b)(2).[2] These hearings are to be conducted by the state or local educational agency responsible for providing services. However, no employee of an agency involved in the education or care of the child may conduct the hearing. Id. The congressional Conference Committee Report makes clear that "any hearings are not conducted by the agency itself, but rather at the appropriate agency level. The hearing will be conducted by an impartial hearing officer since the State or local agency or intermediate unit will be party to any complaint presented." S.Conf.R. No. 94-455, 94th Cong., 1st Sess. 49 (1975), reprinted in (1975) U.S.Code Cong. & Ad.News 1425, 1480, 1502.[3]
 
 
 6
 Whether the due process hearing is provided by the state or local educational agency is left to the discretion of the states. However, if the initial hearing is held at the local level, either party may appeal "to the State educational agency which shall conduct an impartial review of such hearing." 20 U.S.C. § 1415(c).[4] The Act provides that "(t)he officer conducting such review shall make an independent decision upon completion of such review." Id. The decision of the initial hearing officer is final unless appealed; the decision of the state officer is likewise final unless either party brings an action in state court or federal district court. 20 U.S.C. § 1415(e)(1).[5]
 
 
 7
 Bearing in mind the requirements of the Act and the congressional emphasis upon procedural safeguards in enforcing the right to an appropriate education, we turn to the hearing procedures provided by the state of Georgia.
 
 
 8
 These procedures have undergone repeated change. Under regulations promulgated in 1978, Georgia utilized a single tier system. The due process hearing was conducted by a state-appointed regional hearing officer with appeal directly to the courts. In an opinion issued January 5, 1979, however, the Georgia Attorney General cast doubt on the validity of this framework. The Attorney General stated that hearings under the EHA were controlled by Ga.Code § 32-910 which identifies the procedures to be used in school controversies generally.[6]
 
 
 9
 As a result of this opinion, the Georgia hearing procedures were altered to conform to section 32-910. EHA hearings were now held at the local level with the right to appeal to the state board of education. The local board could either itself sit in judgment at the hearing or appoint a hearing officer. If a hearing officer were appointed, his findings were treated as those of a special master subject to approval or rejection by the local board. A similar procedure occurred at the state level: if the state board appointed a hearing officer to conduct the review, his findings too were treated as those of a special master with the power of final decision resting in the board. The procedures had taken this form at the time this suit was instituted.
 
 
 10
 Before a final decision was rendered, however, they underwent further changes. In response to complaints about the new system, the Office for Civil Rights expressed concern that the procedures did not provide the impartial hearing demanded by federal law. In part as a result of these concerns, the Georgia legislature amended section 32-910 in 1980 to exclude complaints brought under the EHA from the coverage of that statute.[7] As a consequence of this amendment, local boards are now required to appoint a hearing officer to conduct the due process hearing. His findings are still subject to approval by the local board. If the board rejects his conclusions, appeal to the state level is automatic. Findings by the state officer are similarly subject to approval by the state board. The decision of the state board is final with no automatic appeal in the event that the officer's findings are rejected.
 
 
 11
 By amending section 32-910, the Georgia legislature has avoided conflict between federal and state statutes. In applying the provisions of the EHA to Georgia administrative practices, however, certain deficiencies are apparent.
 
 
 12
 At the local level, the practice of treating the findings of the hearing officer as the report of a special master poses a formal conflict with federal law. The statute guarantees aggrieved parties an impartial hearing and accordingly prohibits employees of the state agency from conducting the hearings. In addition, the portion of the legislative history quoted above indicates that the educational agency itself may not conduct hearings since it will often be a party to the proceedings. It is thus clear that members of the local board may not conduct hearings.[8] See Campochiaro v. Califano, Civ. No. H-78-64 (D.Conn.1978) (finding probability that plaintiffs would prevail in their contention that local board members may not conduct due process hearing); cf. Robert M. v. Benton, 634 F.2d 1139 (8th Cir. 1980) (holding that Superintendent of Public Instruction may not conduct due process hearing). To appoint an officer to conduct the hearing but then to treat his report only as a recommendation violates the Act's requirement that the decision of the hearing officer be final unless appealed. See Monahan v. Nebraska, 645 F.2d 592 (8th Cir. 1981) (finding that plaintiff had shown probability of success on the merits in challenging scheme permitting Commission of Education to accept or reject decision of due process hearing).
 
 
 13
 If we look to the substance of the local procedures, however, they may be said to comply substantially with the requirements of the EHA. Since a rejection of the officer's findings results in an automatic appeal, it is in effect only a decision to appeal. Conversely, an acceptance of his findings leaves his decision as final unless the other party chooses to appeal. We are reluctant to interfere with Georgia's administrative terminology. So long as it is recognized that the choice before the local board is simply whether or not to appeal the decision of the impartial hearing officer, and that the burden of proof and standard of review on appeal are unaffected by this structural arrangement, we hold that the current procedures for holding local due process hearings do not violate the EHA or section 504.
 
 
 14
 The state review procedures, on the other hand, conflict with federal law both formally and substantively. In treating the findings of the state reviewing officer as the findings of a special master, the state board fails to comply with the requirement that this decision be final unless appealed to state or federal court. Nor can the discretion vested in the state board be interpreted merely as the power to decide whether to appeal. The decision of the state board is final. If it rejects the findings of the reviewing officer, the burden is upon the aggrieved party to pursue his complaint in court. This system not only contravenes the specific requirement of finality: it undermines the enforcement structure created by the Act. The EHA provides that the goal of an appropriate education will be achieved through conference and hearings. To safeguard the right to an appropriate education, Congress made unmistakeably clear that the hearings provided by the Act were to be impartial and result in final decisions. If a state board may, at its discretion, reject the results of this process, the entire system of procedural safeguards is nullified at a single stroke. After considerable time and expense, the state or federal court will be forced to become the guardian of rights which should be protected in the first instance by the administrative processes mandated by the EHA. As one state court has stated in a similar case, "(I)t is the intent of Congress that a party having gone through the administrative hearing processes before the local agency and the (state agency) shall be entitled to a final decision, subject only to a court appeal." In the Matter of the "A" Family, 602 P.2d 157, 167 (Mont.1979).[9]
 
 
 15
 We thus hold that the state review procedures are inconsistent with the requirements of the EHA and section 504.[10] Accordingly, we affirm the award of summary judgment to defendants as to the local procedures and reverse and remand for award of summary judgment to plaintiffs as to the state review procedures.
 
 
 16
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 
 
 
 *
 Former Fifth Circuit case, Section 9(1) of Public Law 96-452 October 14, 1980
 
 
 [1]
 For a discussion of the procedures provided by the EHA and their role in obtaining congressional objectives, see Note, Enforcing the Right to an "Appropriate" Education: The Education for All Handicapped Children Act of 1975, 92 Harv.L.Rev. 1103 (1979)
 
 
 [2]
 20 U.S.C. § 1415(b)(2) provides:
 Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the State educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child.
 
 
 [3]
 The relevant section of the legislative history reads in full:
 (7) The provisions of existing law are clarified and strengthened with respect to impartial due process hearings and language is adopted to assure that:
 (a) any parent or guardian may present a complaint concerning any matter regarding the identification, evaluation, or educational placement of the child or the provision of a free appropriate public education to such child.
 (b) whenever a complaint is received the parents or guardian shall be afforded an opportunity for an impartial due process hearing, which shall be conducted by the local educational agency or the State educational agency. The conferees do not intend that this provision will require changes in existing arrangements where due process hearings are conducted at the level of the State educational agency rather than at the local level. The only requirement with respect to the level of which such hearings are conducted occurs when the hearing is conducted at the local level and in such cases there is a review required at the State agency level. In addition, the conferees point out that any hearings are not conducted by the agency itself, but rather at the appropriate agency level. The hearing will be conducted by an impartial hearing officer since the State or local agency or intermediate unit will be a party to any complaint presented.
 (c) no hearing may be conducted by an employee of the State or local educational agency involved in the education or care of the child. The conferees have adopted this language to clarify the minimum standard of impartiality which shall apply to individuals conducting due process hearings and individuals conducting a review of the local due process hearing;
 ....
 S.Conf.R. No. 94-455, 94th Cong., 1st Sess. 48-49 (1975), reprinted in (1975) U.S.Code Cong. & Ad.News 1480, 1502 (emphasis in original).
 
 
 [4]
 20 U.S.C. § 1415(c) provides:
 If the hearing required in paragraph (2) of subsection (b) of this section is conducted by a local educational agency or an intermediate educational unit, any party aggrieved by the findings and decision rendered in such a hearing may appeal to the State educational agency which shall conduct an impartial review of such hearing. The officer conducting such review shall make an independent decision upon completion of such review.
 
 
 [5]
 20 U.S.C. § 1415(e)(1) provides:
 A decision made in a hearing conducted pursuant to paragraph (2) of subsection (b) of this section shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (c) and paragraph (2) of this subsection. A decision made under subsection (c) of this section shall be final, except that any party may bring an action under paragraph (2) of this subsection.
 
 
 [6]
 Ga.Code § 32-910 reads in pertinent part:
 (a) Every county, city or other independent board of education shall constitute a tribunal for hearing and determining any matter of local controversy in reference to the construction or administration of the school law, with power to summon witnesses and take testimony if necessary, and when such board has made a decision, it shall be binding on the parties.
 (b) Any party aggrieved by a decision of the local board of education rendered on a contested issue after a hearing shall have the right to appeal therefrom to the State Board of Education. The appeal shall be in writing and shall distinctly set forth the question in dispute, the decision of the local board, a concise statement of the reasons why the decision below is complained of, and the party taking the appeal shall also file with the appeal a transcript of testimony as true and correct by the local superintendent. The appeal shall be filed with the local superintendent within 30 days of the decision of the local board, and within 10 days thereafter, it shall be the duty of the local superintendent to transmit a copy of the appeal together with the transcript of evidence and proceedings, the decision of the board, and other matters in the file relating to the appeal, to the State Board of Education. The State Board of Education shall adopt regulations governing the procedure for hearings before the local board and proceedings before it.
 
 
 [7]
 The amendment is codified at § 32-910(f):
 (f) The procedures provided in subsections (a) through (e) of this section shall not be applicable to handicapped children, when a hearing is necessary to decide a complaint made under the Education for All Handicapped Children Act of 1975. The State Board of Education shall promulgate by rules and regulations an impartial due process procedure for hearing and determining any matter of local controversy in reference to the construction or administration of the school law and an appeals procedure with respect to handicapped children as such term is defined by the State Board of Education. Any tribunal which the State Board of Education shall empower to hear such cases shall have the power to summon witnesses and take testimony as such tribunal deems it necessary. In promulgating such rules and regulations, the State Board of Education shall consult with local boards of education and other local school officials in order to establish procedures required by this subsection which will coordinate to the extent practical, with the administrative practices of such local boards of education.
 Appellants question the extent to which the amendment to Ga.Code, § 32-910 has altered Georgia procedures. Our statement of the law today is the same regardless of the precise impact of the amendment on Georgia practices.
 
 
 [8]
 Defendants argue that 20 U.S.C. § 1415(b)(2) authorizes the procedures they have adopted. The legislative history makes clear, however, that the authorization of state agencies to "conduct" the due process hearing means that the agency should arrange the hearing and that it should be conducted at the agency level. Contrary to the position of the defendants we do not find a clear and unambiguous statement in the statute to the contrary. Even were the statutory language less ambiguous than it is, we would still find defendants' position unacceptable, as being in sharp conflict with the entire structure of the EHA
 "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." ... Our objective in a case such as this is to ascertain the congressional intent and give effect to the legislative will .... "It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers."
 Philbrook v. Glodgett, 421 U.S. 707, 713-14, 95 S.Ct. 1893, 1898-1899, 44 L.Ed.2d 525 (1975) (citations omitted). Defendants' citation to Hortonville Joint School District No. 1 v. Hortonville Education Association, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976) does not bear on this issue. That case holds only that a board of education may act as an arbiter in some kinds of cases without violating constitutional standards of due process. It in no way speaks to cases brought under the EHA. Our holding today is based not upon constitutional grounds but upon our interpretation of the statute.
 
 
 [9]
 It is clear also that the state board could not itself conduct the review. As the legislative history indicates, the impartiality demanded in the review proceeding cannot be achieved when the educational agency or one of its employees is in charge of the proceeding. See Vogel v. School Board, 491 F.Supp. 989, 994-95 (S.D.Mo.1980) (holding employee of state board not an impartial hearing officer pursuant to 20 U.S.C. § 1415(c))
 
 
 [10]
 We deal briefly with two other points. In the court below the state defendants argued they were immune from suit under the eleventh amendment. The court did not reach this issue. We have, of course, the authority to affirm on grounds other than those relied on by the district court. There is, however, no basis for doing so in this case. The law has been clear for decades that the eleventh amendment does not bar a federal court from enjoining state officials to conform their future conduct to the requirements of federal law. See Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)
 The lower court found a private right of action under section 504 on the authority of Camenisch v. University of Texas, 616 F.2d 127 (5th Cir. 1980). Camenisch has since been vacated as moot. University of Texas v. Camenisch, --- U.S. ----, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). In vacating, however, the Supreme Court did not question the correctness of this court's holding on the private right of action issue, and indeed ordered the case remanded to the district court for a judgment on the merits. We conclude that this aspect of Camenisch is still good law in this circuit. Cf. Brown v. Sibley, 650 F.2d 760, 767 n.9 (5th Cir. 1981) ("We therefore are disposed, for the limited purpose of our disposition in this case, to assume the existence of such a right (of private cause of action under § 504)").