CHRISTOPHER N., Individually and by and through his parents and next friends, Mr. and Mrs. John R., and Mr. and Mrs. John R., individually, Plaintiffs,

v.

Dr. Charles McDANIEL, in his official capacity as State Superintendent of Schools, and individually, et al., Defendants.

Civ. A. No. C79–2153A.

United States District Court,
N.D. Georgia,
Atlanta Division.

June 3, 1983.

John Leiter, Archer Smith, Atlanta, Ga., for plaintiffs.

Charles Weatherly, Decatur, Ga., for defendants.

## ORDER OF COURT

HORACE T. WARD, District Judge.

This action for injunctive and declaratory relief and for money damages was brought pursuant to the Education for All Handicapped Children's Act, 20 U.S.C. § 1401 *et seq.* ("Public Law 94–142" or "The Education Act"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; ("Section 504"); 42 U.S.C. § 1983; and the Fourteenth Amendment of the U.S. Constitution; and relevant state laws. Plaintiffs are Christopher N., an emotionally dis-

turbed youngster with learning disabilities, and his parents. They contend that the State Board of Education and the Rockdale County Board of Education and their members have failed to provide Christopher with a free appropriate public education, in violation of both federal and state law.

Currently before the court is the motion of the Rockdale County defendants for summary judgment (which was the subject of a hearing in this court on July 23, 1982), and plaintiffs' motion for partial summary judgment. The defendants contend that, as a matter of law, neither 94–142 nor Section 504 authorize a private right of action for damages and that neither statute provides the requisite foundation for a damage claim under § 1983. The plaintiffs seek summary judgment only on the issue of liability.

## BACKGROUND

At the time the complaint was filed (November 21, 1979), Christopher was a twelve-year old boy with specific learning disabilities, minimal brain dysfunction, and behavioral disorders.[1] Since early childhood he has attended several schools, including Woodward Academy, a behavior disorders class in the Clayton County public schools, and the South Metro Children's Center.[2]

In November of 1976 Christopher was evaluated at his parents' initiative by Dr. Barbara Beavers, a private psychologist, who found evidence of a "possible minimal brain dysfunction" and a "behavior disturbance." She recommended residential placement for Christopher at the Village of Saint Joseph, due to "intense familial conflict." On November 30, 1976 he was withdrawn from South Metro Children's Center and enrolled at the Village (a "residential psychotherapeutic school" according to the complaint) by his parents, and resided there at the time the complaint was filed in this case.[3]

The plaintiffs subsequently moved to Rockdale County, and in October 1978 they requested that the Rockdale County School System assume the costs of Christopher's education at the Village of St. Joseph. On January 5, 1979 a committee of Rockdale School System staff members held a meeting (after observing Christopher at the Village) and recommended that Christopher be placed in a "self-contained behaviors disorder class" on a daily basis. The parents rejected the recommendation, or Individualized Educational Program ("IEP"), and requested a due process hearing under P.L. 94–142 on January 12, 1979.

Both the plaintiffs and the Rockdale defendants obtained psychological evaluations of Christopher over the next few months. On May 18, 1979 a hearing was held pursuant to P.L. 94–142 before a Regional Hearing Officer, Dr. Brenda Rogers. Dr. Rogers found that the school system could not provide an appropriate education in this case and that Christopher needed a full-time residential placement. The Hearing Officer for the State Board of Education affirmed the findings of the Regional Hearing Officer, but the State Board of Education rejected these findings. Consequently, the defendants have not provided the funding for Christopher's private education, and have maintained that Christopher's needs could be met in the Rockdale School System.

The plaintiffs allege that the defendants' failure to provide funds for private school constitutes a denial of a "free appropriate public education" in violation of the statutes listed above. They request declaratory and injunctive relief, including reimbursement for past educational expenses as well as full funding for year-round "appropriate special education and related services," and attorney's fees.

1. Plaintiffs' briefs describe Christopher as a "severely emotionally disturbed child."

2. This is a "psychoeducational center" funded by the state serving Clayton County schools. Christopher was referred to the program by county educators in January, 1976.

3. Christopher remained at the Village until May of 1980, attended the Barkley School until June, 1980, and in August of 1980 he was enrolled at the Springdale School in Camden, South Carolina, where he presently resides.

In their motion for summary judgment the Rockdale defendants make two basic arguments. First, they contend that there is no private right of action for damages under 94–142, Section 504, or § 1983, and that all claims for damages or retrospective relief must be dismissed. Second, they argue that they are entitled to judgment due to the parents' unilateral removal of Christopher from Clayton County schools. It is argued that under 20 U.S.C. § 1415(e)(3) the parents have a duty to maintain the status quo until the case is reviewed under the provision of the law.[4]

The plaintiffs contend that compensatory damages are recoverable, and that in this instance the defendants acted in bad faith by not adopting the findings of the hearing officers (making an even stronger case for awarding damages). They also argue that § 1415(e)(3) does not bar their action because Christopher was not removed from public school during the pendency of any administrative or judicial proceedings.

In their cross motion for partial summary judgment the plaintiffs assert that the State defendants have violated both 94–142 and Section 504 by their willful refusal to implement the findings of the hearing officers. They contend that once it was established that the school system was unable to provide Christopher with an appropriate public education, the defendants were obligated to provide the funds for a private placement. The failure to do so allegedly renders defendants liable for damages.

In opposition to this motion the defendants argue that the decision of the hearing officer had to be rejected due to the application of the wrong legal standard. They contend that the evidence showed that Christopher could receive an appropriate education in public school. Furthermore, they reiterate the arguments that only prospective relief is available under 94–142 and Section 504 and that § 1983 is inapplicable to this situation. Finally, in a supplemental brief, the defendants argue that the plaintiffs cannot raise the issue of procedural irregularity for the first time at the district court level. Presumably the plaintiffs should have objected to the failure to adopt the decision of the State Hearing Officer long before this stage.

## I. Can Plaintiffs Maintain a Private Right of Action for Damages?

### A. 94–142

The question of whether damages are available under the Education for All Handicapped Children Act of 1975 has been addressed repeatedly by the courts since the Act went into effect, with a variety of different results. At this juncture, however, it can be said that a consensus has developed among the circuits. The question has been directly addressed by the First, Seventh, Eighth and Eleventh Circuits and they have all followed the lead of the Seventh Circuit in holding that "the statute was not intended generally to provide a damage remedy ..." *Anderson v. Thompson,* 658 F.2d 1205, 1213 (7th Cir.1981).[5]

The Court in *Anderson* recognized that exceptions to this rule might arise, and identified two situations in which a limited damage award might be appropriate: 1) where the services in dispute were necessary to protect the physical health of the child, and 2) where the defendant has acted in bad faith by failing to comply with the procedural requirements of the Act. *Id.* at 1213–1214. The circuit courts, while recognizing these possible exceptions, have yet to find them applicable to a particular case.

---

4. 20 U.S.C. § 1415(e)(3) provides:
   During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian,

be placed in the public school program until such proceedings have been completed.

5. *See Monahan v. Nebraska,* 687 F.2d 1164 (8th Cir.1982); *Powell v. Defore,* 699 F.2d 1078 (11th Cir.1983); *Doe v. Anrig,* 692 F.2d 800, 811 (1st Cir.1982); *Miener v. State of Missouri,* 673 F.2d 969 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 215, 74 L.Ed.2d 171.

Several district courts have permitted claims for damages to proceed, but only one court has actually awarded such damages. *Tatro v. Texas,* 516 F.Supp. 968 (N.D.Tex. 1981).

■ At this point in this discussion the court will refrain from addressing the question of whether damages are appropriate in the present case. The court adopts the conclusion of the circuit courts and holds that, as a rule, damages are not within the scope of relief authorized by the Act absent exceptional circumstances.[6]

### B. *Section 504*

The weight of authority, such as it is, apparently holds that there is no right to damages under Section 504.[7] That section basically provides that recipients of federal funds may not discriminate against the handicapped, and is often utilized in conjunction with the Act, although the two statutes have somewhat different functions. *See Monahan, supra* at 1170. Those decisions which deny the damage remedy under Section 504 have done so for different reasons.

In *Flavin v. Connecticut State Board of Education, supra,* the Court based its decision on the policy arguments concerning the availability of damages under the Education Act. After concluding that a claim for tuition reimbursement is "expressly prohibited under the case law interpreting § 1415 of the EHA," the Court went on to hold:

> It would be manifestly contrary to the comprehensive remedial statutory scheme of the EHA to allow such a recovery merely because the plaintiffs append a claim under Section 504 to their complaint. Accordingly, the plaintiffs' claims

for monetary damages under Section 504 are dismissed.

*Id.* at 833.

A more traditional approach was taken by the Court in *Ruth Anne M., supra.* In that case, the plaintiffs relied on the Supreme Court's decision in *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The Supreme Court stated in *Bell* that federal courts should adjust their remedies to grant necessary relief when federally protected rights are invaded, and that they may use "any available remedy to make good the wrong done." *Id.* at 685, 66 S.Ct. at 777. The plaintiffs contended that the Court should assume that the full range of traditional remedies was available.

The Court rejected this argument on the ground that it failed to give priority to congressional intent. After a thorough review of the scant legislative history of the "overall legislative scheme" of the Rehabilitation Act, the Court concluded that a damage remedy was inconsistent with the legislative purpose of the Act. *Ruth Anne, supra* at 473. The decision was based partly on the belief that a damage remedy "would portend a potentially massive financial liability upon recipients of federal funds, possibly in excess of the amount of funds received." *Id.*

The Court in *Ruth Anne* conceded that the administrative enforcement scheme provided by the Rehabilitation Act "is of limited utility to individual complainants." *Id.* at 472. Nevertheless, it found that the equitable relief available under Section 504 along with the attorneys' fees provision in 29 U.S.C. § 794a combined to provide an effective means of enforcing the federal statutory rights. *Id.* at 473.

The Eighth Circuit has come to the opposite conclusion with regard to the effective-

---

6. *See Anderson, supra* and *Ruth Anne M. v. Alvin Independent School District,* 532 F.Supp. 460 (S.D.Tex.1982) for an exhaustive discussion of the underlying reasons for this conclusion.

7. *Reineman v. Valley View Community School District,* 527 F.Supp. 661, 665 (N.D.Ill.1982); *Boxall v. Sequoia Union High School Dist.,* 464 F.Supp. 1104, 1112 (N.D.Cal.1979) (this court

recognized the appropriateness of damages under 94–142 in certain circumstances); *Ruth Anne M. v. Alvin Independent School District,* 532 F.Supp. 460 (S.D.Tex.1982); *Flavin v. Connecticut State Board of Education,* 553 F.Supp. 827 (D.Conn.1982). Note that the circuit courts, except for the Eighth Circuit, have not squarely addressed this question.

ness of equitable relief as a means of enforcing the rights provided by the Rehabilitation Act. In *Miener v. Missouri, supra,* the Court began its analysis with *Bell v. Hood* and the general principle that "the right to seek money damages for civil rights violations is an accepted feature of the American judicial system." *Id.* at 977, citing *Patton v. Dumpson,* 498 F.Supp. 933, 937 (S.D.N.Y.1980) (holding damages are available under Section 504).

The strongest argument against allowing damages under Section 504 is the fact that the Rehabilitation Act contains an elaborate administrative structure for governmental enforcement of Section 504. *Boxall, supra* at 1112. The Supreme Court has recently cautioned lower courts against reading into such statutes to allow other remedies. *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979). The Court in *Miener* contrasted the extensive statutory remedies provided by the Investment Advisors Act of 1940 (the focus of the Supreme Court's analysis in *Transamerica*) with those of the Rehabilitation Act and concluded that "the administrative enforcement remedies provided under the Rehabilitation Act are of little comfort to the individual plaintiff."[8] *Miener, supra,* 673 F.2d at 978. The Court went on to hold that:

> It is obvious that administrative remedies are inadequate to vindicate individual rights and that Congress could not have expected the individual plaintiff to be made whole through administrative procedures. Indeed, there is support for a damage remedy to be found in the legislative history of the 1978 amendments to the Rehabilitation Act. The House-Senate Conference Committee eliminated a

prohibition against money damages which had been proposed regarding vocational rehabilitation programs under the Act. H.R.Rep. 95–1780, 95th Cong., 2d Sess., . . .

> We indulge the presumption of *Bell v. Hood, supra,* that a wrong must find a remedy, and in light of the inadequacy of administrative remedies, conclude that damages are awardable under § 504.

■ This court is in substantial agreement with the Eighth Circuit on the issue of the availability of damages under Section 504, and holds that such damages may be awarded.[9] Whether or not they are appropriate in this case is a question which cannot be addressed without a fuller development of the facts. At this point the court simply notes that summary judgment is not appropriate on the issue of the unavailability of damages under either 94–142 or Section 504.

## C. § 1983

The question of whether plaintiffs can maintain a claim under § 1983 is more difficult. The defendants contend that both 94–142 and Section 504 were intended by Congress to create exclusive remedies, and that the relief provided by the statutes is inconsistent with that available under § 1983. They argue that the use of § 1983 would "eviscerate" congressional objectives since relief under both federal statutes was intended to be limited to equitable relief. This argument has been relied upon by some courts to disallow claims under § 1983. *See Ruth Anne M., supra* at 475–476; *Anderson, supra* at 1216; *Flavin, supra* at 831–832.[10] Those courts which have

---

**8.** "Administrative remedies" primarily involve the sanction of termination of funds for acts of discrimination. 45 C.F.R. § 80.8. The individual complainant may not actually participate in the investigation by the Department of Health and Human Services and has no right to challenge its findings. 45 C.F.R. § 80.7(c) and (d)(2).

**9.** The Eleventh Circuit acknowledged that "section 504 has been interpreted to provide a cause of action for damages" in *Powell v. De-*

*fore, supra,* but declined to award damages in that case.

**10.** Those courts which have permitted plaintiffs to maintain claims under § 1983 are invariably the ones that expressly recognize the availability of damages under the statute(s). *See e.g., Boxall, supra; Barbara Quackenbush v. Johnson City School District,* 3 EHLR 553:586 (N.D. N.Y.1982); *Dept. of Education, State of Hawaii v. Katherine D.,* 531 F.Supp. 517 (D.Hawaii

permitted plaintiffs to maintain claims under § 1983 are invariably the ones that expressly recognize the availability of damages under the statute(s). *See, e.g., Boxall, supra; Barbara Quackenbush v. Johnson City School District,* 3 EHLR 553:586 (N.D.N.Y.1982); *Dept. of Education, State of Hawaii v. Katherine D.,* 531 F.Supp. 517 (D.Hawaii 1982); *Tatro v. Texas,* 516 F.Supp. 968 (N.D.Tex.1981).

The Eleventh Circuit apparently followed this line of reasoning in *Powell v. Defore* and held that Congress intended the judicial remedy provided in the Act to be exclusive. The court refused to allow the plaintiffs' § 1983 claim, citing *McGovern v. Sullins,* 676 F.2d 98, 99 (4th Cir.1982) and *Pennhurst State School & Hosp. v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981). The Fourth Circuit in *McGovern* held simply that a § 1983 claim cannot be maintained for relief available under EAHCA due to their conclusion that the detailed provisions of the Act constitute "the only route to relief anticipated by Congress." *McGovern,* 676 F.2d 98, 99. The Supreme Court's decision in *Pennhurst,* heavily relied upon by the defendants in the present case, stands for the proposition that where Congress intends to impose a condition on the grant of federal funds, it must do so unambiguously. 101 S.Ct. at 1543. The Court in *Pennhurst* considered whether its earlier decision of *Maine v. Thiboutot*[11] was controlling on the issue of the availability of § 1983 to compel compliance with the Act in question. While noting that Justice Powell's dissent in *Thiboutot* suggested that § 1983 is unavailable where the governing statute provides an exclusive remedy, the Court in *Pennhurst* was unable to decide if *Thiboutot* applied; it was unclear whether the Act in question provided an exclusive remedy.

The Eleventh Circuit has already ruled that Congress intended the remedy provided in the Act to be exclusive. *Powell v. Defore, supra.* Therefore, this court must conclude that a § 1983 claim is not cognizable in conjunction with the Education Act. The question which remains is whether a claim under § 1983 may be predicated upon Section 504 (a question which the Eleventh Circuit has not directly addressed).

In *Pushkin v. Regents of University of Colorado,* 658 F.2d 1372 (10th Cir.1981) the Court considered the propriety of injunctive relief granted by a district court in an action brought pursuant to Section 504 and § 1983. (The decree which was the subject of dispute directed that the plaintiff, a doctor suffering from multiple sclerosis, be admitted to a residency program which had originally denied him admission.) The issue of the availability of damages was not raised on appeal; the district court had denied that request. The appellate court did address the question of whether a § 1983 claim was proper in a Section 504 action:

> Regardless of the reach of *Maine v. Thiboutot, supra,* actions pursuant to § 1983 are definitely recognized under statutes conferring substantive rights. It is plain that § 504 does confer substantive rights upon handicapped people in that Congress contemplated a private right of action to enforce mandatory antidiscrimination provisions. Thus, under any reading of *Thiboutot,* plaintiff's cause of action is properly based on § 1983 . . . .

658 F.2d at 1382. The Tenth Circuit had the benefit of the Supreme Court's decision in *Pennhurst,* which supposedly limited *Thiboutot,* when it drew this conclusion.

The Eighth Circuit did not find it so easy to allow plaintiff's § 1983 claim in *Miener, supra* (which involved both the Rehabilitation Act and the Education Act). While

1982); *Tatro v. Texas,* 516 F.Supp. 968 (N.D. Tex.1981).

**11.** In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court considered whether § 1983 would encompass a claim under the Social Security Act. The Court

held that § 1983 applies to all federally created rights, whether constitutional or statutory. Section 1983 was held to be available to the plaintiffs for violations of the Act, since they would have been without a remedy otherwise.

recognizing that several courts have allowed such claims under both Acts, the Court decided that remand was necessary in order to ascertain whether *Thiboutot* governed or whether the remedies under the statutes were exclusive, precluding the availability of § 1983, and whether the complaint in question actually requested damages under § 1983 which were coextensive with those sought under the statutes. The Court was also concerned with the question of whether the underlying statutes were "civil rights" laws such that they were consistent with the intent and purpose of § 1983. 673 F.2d at 977.

This court is inclined to rule that a claim under § 1983 is generally sustainable in conjunction with Section 504. Nevertheless, after carefully reviewing the complaint, the court concludes that the plaintiff has not clearly established a claim under § 1983. Reference to the statute is made only once, with regard to jurisdiction. No claim for relief is based specifically on § 1983. Furthermore, it is not clear how the use of the statute enhances plaintiffs' claims. For these reasons, the court DENIES the defendants' motion for summary judgment on this issue, since it concludes that relief may be available under § 1983, and DENIES plaintiffs' motion for partial summary judgment on the issue of liability under § 1983. The validity of the § 1983 claim can be determined later in the proceedings, if necessary.

## II. Did Christopher's Parents Waive the Right to Tuition Reimbursement Under § 1415(e)(3)?

The defendants contend that because Christopher's parents withdrew him from the Clayton County School System and placed him at the Village of St. Joseph, they may not recover any tuition costs for his private education. They argue that the "duty to maintain a child in his then current placement" was violated by the placement of Christopher in a private school, even though this occurred prior to the institution of due process proceedings.

The heart of this matter is clearly the question of whether the facts of this case are governed by § 1415(e)(3), which provides as follows:

> During the pendency of any proceedings conducted pursuant to this section, unless the State or local education agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(e)(3).

Numerous courts have considered the applicability of this section to particular cases, as well as its overall purpose. The court does not intend to conduct an exhaustive review of these decisions since each involved a different set of facts. The key questions here are whether Christopher's parents upset the status quo during the pendency of any proceeding (in violation of the statute) and if so, whether their actions affect their right to receive tuition reimbursement.

A case which this court finds most instructive is *Doe v. Anrig*, 692 F.2d 800 (1st Cir.1982). Although it was faced with an entirely different set of facts, the court made the following general observation:

> Section 1415(e)(3) is designed to preserve the status quo pending resolution of administrative and judicial proceedings under the Act ... It amounts to an automatic stay preventing any change in a child's location and educational program, except by agreement of the parties. *The section has been interpreted ... to require that whoever was paying for the placement prior to review shall continue to do so while review is pending ... But though it bears upon the issues of interim financing, we find no indication that the section was ever intended to govern ultimate rights or obligations with respect to the expenses of placement ...* (emphasis added.)

*Id.* at 810.

In *Doe,* the Court considered the question of whether parents who had successfully

challenged an I.E.P. could be reimbursed for the expenses of keeping their child in private school during the pendency of the litigation. (It was ultimately determined that the private school was the proper placement.) The Court merely held that § 1415(e)(3) had no bearing whatsoever on the issue of reimbursement. This court agrees.

The court does not find the Fourth Circuit's decision in *Stemple v. Board of Education of Prince George's County,* 623 F.2d 893 (4th Cir.1980) to be determinative in this case.[12] In *Stemple,* the parents withdrew their child from a placement orchestrated by the defendant County, to which they objected, and unilaterally placed their daughter in a private school. Immediately thereafter the parents requested funding for the private education; the denial of funding set the legal machinery in motion. The Fourth Circuit considered the violation of the status quo by the parents to bar their claim for tuition reimbursement after the case had been resolved. Under the facts and circumstances of that case, the decision was a proper one. The facts of the present case are somewhat different.

█ Christopher's parents withdrew him from the Clayton County schools in November of 1976 at the recommendation of a private psychiatrist. There is no evidence of any type of dispute with any school system at that time. It was not until two years later, in the fall of 1978, that the plaintiffs requested public funds for Christopher's education. There was no disruption of any "status quo" by them; Christopher's placement did not become an issue for the Rockdale defendants until at least two years after he entered the Village of St. Joseph. The difference between these facts and those in *Stemple* must be acknowledged. In their "Second Supplemental Brief in Support of Motion for Summary Judgment," the Rockdale defendants acknowledge the fact that the plaintiffs did not violate § 1415(e)(3) (primarily due to the fact that Christopher was removed from public school prior to September 1,

1978, the date the Act took effect). They contend that nevertheless, the parents must bear the cost of Christopher's placement until the end of these proceedings.

█ The court agrees with this argument. The statute does impose the duty to continue providing the current education upon whoever is doing so when the proceedings begin. What the defendants persistently refuse to acknowledge is that neither the statute nor the case law preclude the possibility that the parents might later be able to recover the expenses they incurred during the pendency of the proceedings.

The cases cited by the defendants repeatedly and clearly state that § 1415(e)(3) has no bearing on who ultimately pays the cost of parental private placement. *See, e.g., Stacey G. v. Pasadena Independent School District,* 695 F.2d 949, 953 (5th Cir. 1983); *Doe v. Anrig, supra.* Section 1415(e)(3) may not *require* the school system to compensate parents who transfer their children to private schools without consulting the state, but neither does it foreclose the possibility that such reimbursement may ultimately be required under a different theory (e.g. Section 504 or Section 1983, or perhaps 94–142 under "exceptional circumstances"). In this case, where the parents have not even violated the provisions of the statute, the court concludes that the defendants' motion for summary judgment must be DENIED.

To review the court's findings thus far, they are as follows: a private cause of action for damages is available under 94–142 only in exceptional circumstances. The court DEFERS the decision as to whether or not such circumstances are present here. Damages are available under Section 504; it remains to be decided whether they are appropriate in this case. Similarly, the court is unable to determine whether plaintiffs have made out a claim under § 1983. Defendants' motion for summary judgment is therefore DENIED on all grounds raised, except that plaintiffs' claim for relief under § 1983 may ultimately fail.

**12.** *Stemple* is heavily relied upon by defendants in making their argument.

III. *Plaintiffs' Motion for Partial Summary Judgment on Issue of Liability*

The plaintiffs' motion for summary judgment focuses on the crucial facts and issues in this case. The plaintiffs contend that the refusal of the State Board of Education to implement the findings of both the Regional and State Hearing Officers constitutes a violation of both 94–142 and Section 504. This contention is based upon § 1415(e)(1) of the Education Act which provides that the findings of the Regional Hearing Officer are final unless appealed to the state level, and that the State Hearing Officer's decision is final unless an action is brought to contest it in state or federal court.[13] In this case, the plaintiffs argue, the intentional circumvention of the requirement of the Act constitutes a violation of 94–142, Section 504, and § 1983. They claim that even if damages are not considered available under these statutes, this case fits the "bad faith" exception articulated by the Seventh Circuit in *Anderson*.[14]

The state defendants' arguments in opposition to this motion have essentially been set forth in the "background" section above. They contend that the rejection of the state hearing officer's decision was an effort to bring the case *within* the provisions of the law, since the evidence showed that the public school system could provide Christopher with an "adequate educational opportunity."

A. *Have Plaintiffs Waived Their Right to Raise This Issue?*

■ The Rockdale defendants raise a second argument (in a supplemental brief filed on August 2, 1982) in opposition to plaintiffs' motion, which will be addressed first. It is argued that plaintiffs did not allege any procedural violations of 94–142 until they moved for partial summary judgment on June 3, 1982, and that these objections should have been raised at the administrative level. In other words, the fact that the State Hearing Officer's findings were subject to rejection by the State Board of Education was an element of Georgia's review procedures which should have been challenged during the administrative hearings. According to the defendants, the failure to do so constitutes a waiver of the right to raise the issue in this court.

In making this argument, defendants completely misinterpret the thrust of the allegations in this case. They convert an individual claim of procedural violations to a challenge against the whole state procedural mechanism developed in response to the federal laws. Plaintiffs have not attempted to effect such a challenge; moreover, their failure to do so at the administrative level cannot constitute an obstacle to their right to raise the present claim.[15] Nor should plaintiffs be penalized for failing to anticipate the rejection of the Regional and State Hearing Officers' findings by the State Board of Education. It would have been pointless to object to the state scheme at the administrative level. The hearing officers are authorized to evaluate evidence regarding the proper educational placement of children, and have no authority to consider the legality of state regulations.

The plaintiffs' argument on this motion is not "an afterthought, brought forward at the last possible moment to undo the administrative proceedings without consideration of the merits" [as the defendants at-

---

**13.** 20 U.S.C. § 1415(e)(1) provides:
A decision made in a hearing conducted pursuant to paragraph (2) of subsection (b) of this section shall be final, except that any party involved in such hearing may appeal such decision under the provisions of subsection (c) and paragraph (2) of this subsection. A decision made under subsection (c) of this section shall be final, except that any party may bring an action under paragraph (2) of this subsection.

**14.** The Court stated that: "[a] second exceptional circumstance would exist when the defendant has acted in bad faith by failing to comply with the procedural provisions of section 615 in an egregious fashion ..." 658 F.2d at 1214.

**15.** *See generally, Monahan v. State of Nebraska,* 645 F.2d 592, 597, vacated in part, aff'd in part, 687 F.2d 1164 (1982).

tempt to argue in their brief, citing *United States v. L.A. Trucker Lines, Inc.,* 344 U.S. 33, 35, 73 S.Ct. 67, 68, 97 L.Ed. 54 (1952)]. It is an argument based squarely upon the facts of this case, as they developed *after* the administrative hearings. The court cannot conceive of justification for refusing to consider plaintiffs' claim under § 1415(e)(1), and will proceed to address these allegations.

B. *Did Defendants Violate Federal Law?*

■ The state administrative procedures for handling cases brought under 94–142 and Section 504 have been in flux since the present action was instituted. At the time the first hearing was held in this case the state procedures were supposed to conform with *Ga.Code* § 32–910, which was applicable to controversies over school-related issues. *See Helms v. McDaniel,* 657 F.2d 800, 803 (5th Cir.1981), *cert. denied,* 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 Among other things, this meant that the findings of a State Hearing Officer were treated as those of a "special master" subject to the approval of the State Board of Education. *Ga.Code* § 32–910 was amended in 1980, but the state review procedures have apparently remained essentially the same; specifically, the findings of the State Hearing Officer are not considered final and are subject to the approval of the state board.

The Fifth Circuit addressed the issue of whether state procedures comply with federal law in *Helms v. McDaniel, supra.* The Court found that the system "not only contravenes the specific requirement of finality: it undermines the enforcement structure created by the Act." *Id.* at 805. The Act was clearly intended to provide the parties with an *impartial* hearing, and the Court concluded that the state board's power to nullify the reviewing officer's decision was inconsistent with this requirement. *Id.* at 806.

*Helms* was decided in 1981 and is therefore not specifically applicable to this case. The defendants did not have the "benefit"

of this decision and may not have been aware that the state review procedures violated federal law. This court is faced with a narrower question than the one the Court confronted in *Helms:* whether *these defendants* violated federal law by refusing to implement the findings of the hearing officer. This court concludes that they did.

In enacting PL 94–142 Congress intended to design procedural safeguards which would guarantee that parents and children could enforce their rights under the Act. A primary mechanism for such enforcement is the "impartial due process hearing" required under § 1415(b)(2):

> Whenever a complaint has been received under paragraph (1) of this subsection, the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted by the state educational agency or by the local educational agency or intermediate educational unit, as determined by State law or by the State educational agency. No hearing conducted pursuant to the requirements of this paragraph shall be conducted by an employee of such agency or unit involved in the education or care of the child.

Read in conjunction with the finality requirement in § 1415(e)(1) (note 13, *supra*), this section clearly evidences the intent to foreclose the possibility that the "state educational agency" could control or alter the outcome of the hearing as they did in this case. Therefore, the state defendants violated federal law when they rejected the findings of the State Hearing Officer.

As Professor Laurence Tribe writes, "state action must give way to federal legislation where a 'valid act of Congress fairly interpreted is in actual conflict with the law of the State.' "[16] In other words, to the extent that state law conflicts with federal law, federal law preempts state law. "State action must be invalidated if its effect is to discourage conduct that federal action seeks to encourage." *Id.* The constitutional doctrine of preemption applies to

**16.** Tribe, Laurence H., *American Constitution Law,* 1978, p. 379, quoting *Savage v. Jones,* 225 U.S. 501, 533, 32 S.Ct. 715, 726, 56 L.Ed. 1182 (1912).

this case and renders the action of the State Board of Education invalid. Summary judgment on the issue of liability for violation of § 1415(e)(1) and § 1415(b)(2) is GRANTED in favor of the plaintiffs and against the state defendants.

### CONCLUSION

The foregoing order, while disposing of some of the issues in this case, leaves many questions unresolved. The court has denied the Rockdale defendants' motion for summary judgment on the issue of damages and granted plaintiffs' motion for partial summary judgment on the issue of liability against the state defendants. It has been determined that damages may be awardable in this case, but it is not clear which federal statute(s) would provide the basis for such relief. The question of whether any of the defendants violated the substantive provisions of the Education Act or Section 504 by not providing the required "free appropriate public education" has not been answered. Nor has it been determined whether § 1983 is available as a basis for relief and, if so, whether that statute has been violated. Finally, although the court did find that the state defendants violated certain procedural provisions of the Education Act, the remedy for the violation has not been determined.