**Richard B. MANECKE, et al., Plaintiffs-Appellants,**

**v.**

**SCHOOL BOARD OF PINELLAS COUNTY, FLORIDA, etc., Defendant-Appellee.**

**No. 84–3507.**

United States Court of Appeals, Eleventh Circuit.

June 11, 1985.

---

Gardner W. Beckett, Jr., St. Petersburg, Fla., for plaintiffs-appellants.

B. Edwin Johnson, Clearwater, Fla., for defendant-appellee.

Before FAY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

FAY, Circuit Judge:

Lauren Manecke, by and through her parents, legal guardians and next friends, Richard and Julia Manecke ("the Maneckes"), brought this action against the Pinellas County School Board ("the Board"). In their amended complaint, the plaintiffs alleged that the Board's failure to provide them with a timely, impartial due process hearing violated their rights under § 504 of the Rehabilitation Act of 1973 (the Rehabilitation Act), 29 U.S.C. § 794, and 42 U.S.C. § 1983, and thus entitled them to reimbursement of funds spent to place Lauren in a private residential educational setting. The district court dismissed the amended complaint, holding that damages were not recoverable under either § 504 or § 1983. *Manecke v. School Board,* 553 F.Supp. 787 (M.D.Fla.1982). Plaintiffs thereafter were granted leave to file their second amended complaint. They again sought tuition reimbursement, this time pursuant to the Education of the Handicapped Act (EHA), 20 U.S.C. § 1415. After a two day bench trial, the district court found in favor of the Board. This appeal followed. For the reasons which follow, we affirm in part, reverse in part, and remand this case to the district court.

## I. FACTUAL BACKGROUND

Lauren Manecke had suffered brain damage at birth. As a result, she was epileptic and also exhibited other mental and emotional handicaps. Despite these problems, Lauren had been enrolled in "regular"

school programs supplemented with special education classes until February, 1979, when her then current high school placement came to a halt.

Lauren left the high school with a thirty-two year old man with whom she was having a sexual relationship. She stayed with him away from her home for six days. Both before and after this episode, Lauren acted in a sexually provocative manner. It seems she employed sex as a means of asserting her independence and maturity.

When Lauren returned from her stay with the older man, her parents withdrew her from the high school she was attending and enrolled her in a small private school. Mrs. Manecke thereafter requested that the Board enroll Lauren in a county special education school. The Board agreed, and Lauren commenced attending classes at the Nina Harris School for exceptional children ("Nina Harris") in September, 1979. Lauren was evaluated and classified as emotionally handicapped and physically impaired. Before she began at Nina Harris, an individual education program ("IEP") for Lauren was developed by the Board in conjunction with her parents. *See infra* note 4 and accompanying text.

Lauren seemed to be adjusting well to Nina Harris: she was making adequate academic progress, appeared well-behaved, and participated in some extracurricular social activities. The quality of Lauren's homelife, however, was rapidly deteriorating. She fought incessantly with family members, especially her mother and younger brother.

On December 19, 1979, Mrs. Manecke wrote Dr. Howard J. Hinesley, the Board's Assistant Superintendent for Exceptional Student Education. In a two page typewritten letter, Mrs. Manecke expressed her concern over Lauren's emotionally charged behavior, and the Maneckes' desire to place Lauren in an out-of-state residential facility.[1] Mrs. Manecke attached to the typewritten letter a handwritten note requesting a due process hearing on the issue of Lauren's appropriate educational placement.

Dr. Hinesley forwarded copies of the letter and request for due process hearing to the school district's attorney. Dr. Hinesley assumed that the attorney's office would take any necessary action relative to the due process hearing.

Mrs. Manecke sent a copy of her December 19, 1979, correspondence to the Florida Commission of Education. In response, Diane Wells, an administrator with that agency, instructed Dr. Hinesley to mediate the dispute between the Board and the Maneckes; he was specifically advised to avoid resort to more formal procedures. The Maneckes, Dr. Hinesley and Mr. Delp met on February 13, 1980. The Maneckes stated that because of Lauren's intractability, they believed residential placement was necessary. Dr. Hinesley and Mr. Delp, however, expressed their belief that the Board was providing Lauren with an appropriate education at Nina Harris. Consequently, it was their position that the expense of residential placement need not be borne by the school board.

The Maneckes suggested that Dr. Hinesley and Mr. Delp meet with Dr. Andriola, Lauren's treating neurologist, and Dr. John Mann, an adolescent psychologist. Dr. Hinesley acceded to this request, and, on March 12, 1980, the meeting was held. The Maneckes asked if this meeting was their due process hearing and if their attorney should be present. Dr. Hinesley responded that the meeting was merely an informal effort to resolve the dispute over Lauren's placement. Although Dr. Hinesley did not waiver in his belief that the Board was not required to pay for Lauren's placement in a residential facility, he did end the meeting by promising to furnish the Maneckes with information concerning sundry residential facilities.

Immediately after this meeting, the Maneckes were contacted by the Devereux

---

1. This was not the first time that the Board was apprised of the Maneckes' interest in residential schools; during the IEP conference held prior to Lauren's enrollment in Nina Harris, Lauren's parents asked Mr. William Delp, Nina Harris' Director of Admissions for Exceptional Students, for information about such facilities.

School for exceptional children. They were told that Devereux, which is located in Texas, had a rare residential placement vacancy which Lauren could fill if she were promptly enrolled. The Maneckes agreed to Devereux's terms and withdrew Lauren from Nina Harris on March 21, 1980. The Board was not informed why Lauren was removed from school. The Maneckes then enrolled Lauren in Devereux.

Mrs. Manecke later complained to the United States Office of Civil Rights (OCR) that the Board unlawfully refused to place Lauren in a residential facility because of her age. As a result of that agency's mediation efforts, the Board, in July of 1980, sent Lauren's parents a standard request for due process hearing form. Although the Maneckes received it, it was never returned to the Board. The OCR dropped the age discrimination charge in December, 1980. The OCR did, however, order the Board to hold a due process hearing. The hearing, scheduled for January 26, 1981, was cancelled by the Maneckes.

## II. PROCEDURAL HISTORY

The gravamen of plaintiffs' two-count amended complaint, brought under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Civil Rights Act of 1871, 42 U.S.C. § 1983, was that the board's failure to provide them with a due process hearing on the issue of Lauren's educational placement within 45 days of Mrs. Manecke's December 19, 1979 request, *see* 34 C.F.R. 300.512, necessitated their unilateral transfer of Lauren to a residential facility. The relief they sought was an order requiring the Board to reimburse them for Lauren's tuition at Devereux and other expenses.

The Board did not answer the amended complaint; instead, it filed a motion to dismiss. The Board argued that: (1) § 504 did not authorize an award of damages to a private litigant; (2) even if it did, the Maneckes waived their rights under that statute; and (3) plaintiffs could not employ § 1983 as a basis for recovery because doing so constituted an "end run" around the administrative process established in the EHA.

The district court accepted the Board's position on § 504, concluding that there is no private right of action for damages under that statute. *Manecke*, 553 F.Supp. at 790. With respect to the § 1983 count, the court essentially held that allowing plaintiffs to pursue that damage claim would be inconsistent with its ruling that a private plaintiff is entitled only to injunctive or declaratory relief under § 504. *Id.* at 791. The district court therefore dismissed the amended complaint.

Because the court hinted that the plaintiffs could state a claim under the EHA, *see id.* at 790 n. 4, the plaintiffs moved for leave to amend the complaint to allege a violation of that Act. The court granted the motion, plaintiffs' second amended complaint was filed, and a two-day bench trial was held on the EHA claim.

The district court, relying on *Powell v. Defore*, 699 F.2d 1078 (11th Cir.1983), and *Anderson v. Thompson*, 658 F.2d 1205 (7th Cir.1981), held that plaintiffs were not entitled to relief under the EHA.[2] This appeal followed.

On appeal, the Maneckes essentially contend that: (1) the district court erred in dismissing the amended complaint brought

---

**2.** In *Powell* we noted that "[a]s a general rule, compensatory damages are not available under the [EHA]." *Powell*, 699 F.2d at 1081. We also added, however, that damages may be awarded in an EHA case if the plaintiff establishes the existence of "exceptional circumstances." *Id.* (citing *Anderson*, 658 F.2d 1205). The Seventh Circuit, in *Anderson*, held that there were two circumstances in which the parents could be awarded reimbursement for educational expenses in an EHA case, even though the parents unilaterally transferred the child: (1) where the school district's placement of the child would

endanger the child's physical health, 658 F.2d at 1213–14; and (2) where the school district "acted in bad faith by failing to comply with the procedural provisions of [the EHA] in an egregious fashion." *Id.* at 1214.

The district court concluded that continued placement at Nina Harris did not pose a threat to Lauren's physical health. It also held that the Board was not acting in bad faith when it failed to provide the plaintiffs with a timely due process hearing. Accordingly, the district court ruled that plaintiffs were not entitled to damages under the EHA.

alternatively under § 504 and § 1983; (2) the district court erred in applying the *Powell-Anderson* test for damages under the EHA to the facts of this case; and (3) the district court exceeded its authority under the EHA by effectively conducting its own impartial due process hearing. After a brief overview of the EHA, we will address these contentions seriatim.

## III. THE EHA [3]

The EHA provides public school districts with federal funding for the education of handicapped children so long as the "[s]tate has in effect a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). A "free appropriate public education" is defined as "special education and related services" which, *inter alia*, are provided in conformity with the IEP.[4] *Id.* § 1401(18). The IEP serves to tailor the "free appropriate public education" mandated by the Act "to the unique needs of the handicapped child." *Board of Education v. Rowley*, 458 U.S. 176, 181, 102 S.Ct.

The *Anderson* test for reimbursement referred to in *Powell* no longer is good law. In *Burlington School Comm. v. Dept. of Educ.*, —— U.S. ——, ——, 105 S.Ct. 1996, 2001–2002, 85 L.Ed.2d 385 (1985), the Supreme Court had occasion to resolve the following issues: "whether the potential relief available under [20 U.S.C.] § 1415(e)(2) includes reimbursement to parents for private school tuition and related expenses, and whether [20 U.S.C.] § 1415(e)(3) bars such reimbursement to parents who reject a proposed IEP and place a child in a private school without the consent of local [school] authorities." With respect to the first issue, the Court held that the EHA authorizes a reviewing court "to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such a placement, rather than a proposed IEP, is proper under the Act." —— U.S. at ——, 105 S.Ct. at 2002. The Court did not condition the availability of reimbursement on a showing of exceptional circumstances, nor did the decision it affirmed. *See Town of Burlington v. Dept. of Educ.*, 736 F.2d 773, 795–99 (1st Cir.1984). On the second issue, the Court ruled that parents who unilaterally change the placement of their child during the pendency of the administrative review proceedings, in contravention of "the conditional command of § 1415(e)(3)," do not forfeit their right to reimbursement if the court decides that their placement decision was appropriate under the EHA. —— U.S. at ——, 105 S.Ct. at 2004.

It bears mentioning that the Court emphasized that court-ordered reimbursement is not the equivalent of an award of damages. *Id.* at ——, 105 S.Ct. at 2002. We thus discern no sound reason for questioning the result reached in *Powell*, a case in which the plaintiffs sought tort-type damages, not tuition reimbursement. *See Powell*, 699 F.2d at 1081. *Anderson*, however, like the instant case, did involve tuition reimbursement. In light of *Burlington School Comm.*, the district court's reliance on *Anderson* was misplaced. Because we hold today that the district court should not have tried the EHA claim, *see infra* Part V, the district court's error in applying to the facts of this case the *Anderson*

test for reimbursement does not figure prominently in our decision.

3. Much has been written by the Supreme Court, this court, and the commentators about the genesis and substantive and procedural aspects of the EHA. *See, e.g., Burlington School Comm. v. Dept. of Educ.*, —— U.S. ——, 105 S.Ct. 1996, 85 L.Ed.2d 385; *Bd. of Educ. v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *Georgia Ass'n of Retarded Citizens v. McDaniel*, 716 F.2d 1565 (11th Cir.1983), *vacated and remanded*, —— U.S. ——, 104 S.Ct. 3581, 82 L.Ed.2d 880 (1984), *on remand*, 740 F.2d 902 (11th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1228, 84 L.Ed.2d 365 (1985); Note, *Enforcing the Right to an "Appropriate" Education: The Education for All Handicapped Children Act of 1975*, 92 Harv.L.Rev. 1103 (1979). We therefore confine our discussion of the EHA to only those provisions of the Act which are pertinent to the resolution of this case.

4. The IEP is defined as a:

written statement for each handicapped child developed in any meeting by a representative of the local educational agency or an intermediate educational unit who shall be qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of handicapped children, the teacher, the parents or guardian of such child, and, whenever appropriate, such child, which statement shall include (A) a statement of the present levels of educational performance of such child, (B) a statement of annual goals, including short-term instructional objectives, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.

20 U.S.C. § 1401(19).

3034, 3038, 73 L.Ed.2d 690 (1982). Moreover, federal regulations provide that if necessary to give a handicapped child special education and related services, the state must place that child in a public or private residential program at public expense. 34 C.F.R. § 300.302.

The EHA also contains a detailed procedural component. Any state or local agency receiving federal assistance under the Act must, in accordance with the requirements of 20 U.S.C. § 1415, establish and maintain procedural safeguards. Among these is the requirement that parents be given the opportunity to contest virtually any matter concerning the educational placement of the handicapped child, or the provision of a "free appropriate public education" to such child. *Id.* § 1415(b)(1)(E). Additionally, if the parents of a handicapped child decide to bring a complaint, they must be given an "impartial due process hearing." *Id.* § 1415(b)(2). Federal regulations mandate that a hearing must be held and a final decision must be reached not later than 45 days after the public agency receives a request for a hearing. 34 C.F.R. § 300.512. Upon completion of the administrative process, any party dissatisfied with the administrative final decision may "bring a civil action with respect to the complaint" in either state or federal court. 20 U.S.C. § 1415(e)(2).

The Maneckes, relying on *Smith v. Robinson,* —— U.S. ——, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), argue that the district court erroneously dismissed both counts of their amended complaint. They essentially contend that in the unique circumstances of this case, the EHA is not the exclusive avenue through which to seek relief. The Board, of course, disagrees. First, the Board insists that *Smith* requires us to affirm the district court's dismissal of the § 1983 count, albeit for reasons not articulated by the trial court. Second, the Board contends that the § 504 count failed to state a claim because (1) the amended complaint alleges no discrimination; (2) money damages are not available under that statute; and (3) *Smith* holds that the EHA is the sole remedy for handicapped children seeking a free appropriate public education. After carefully considering the arguments of both sides, we conclude that the district court erred in dismissing the § 1983 claim but correctly dismissed the § 504 claim.

## IV. (a) § 1983 AND THE EHA

The plaintiffs and the Board read *Smith* as supporting their respective positions on § 1983. A review of that case is therefore appropriate.

In *Smith* the plaintiffs brought suit under the EHA, § 504 of the Rehabilitation Act, and § 1983. The § 1983 claim was based on alleged violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The plaintiffs ultimately obtained relief on the basis of state law. Although the EHA does not provide for attorney's fees to a prevailing party, the district court awarded plaintiffs fees and costs in the amount of $32,109. The court based the award on 42 U.S.C. § 1988, because plaintiffs had stated independent constitutional claims via § 1983, and on § 505 of the Rehabilitation Act, 29 U.S.C. § 794a(b), because plaintiffs had alleged a violation of § 504.[5] On appeal, the First Circuit reversed. *Smith v. Cumberland School Committee,* 703 F.2d 4 (1st Cir.1983).

The Supreme Court affirmed the court of appeals, holding that the plaintiffs were not entitled to attorney's fees under either § 1988 or § 505 of the Rehabilitation Act. *Smith,* 104 S.Ct. 3457. The Court arrived at this conclusion after examining the law on awarding attorney's fees on the basis of substantial, though unaddressed, constitutional claims, *see Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and the substantive aspects and de-

---

5. 29 U.S.C. § 794a(b) provides that:
 In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

tailed procedural requirements of the EHA, a statutory scheme which does not mention attorney's fees.

The Court, after noting that the plaintiffs' unaddressed due process and equal protection claims, bought under § 1983, were virtually identical to the EHA claims, undertook a separate analysis of these independent constitutional claims. The Court recognized "the comprehensive nature of the procedures and guarantees set out in the EHA" as well as the intent of Congress "to place on local and state educational agencies the primary responsibility for developing a plan to accommodate the needs of each individual handicapped child." *Smith*, 104 S.Ct. at 3469. The court also noted that in enacting the EHA, Congress attempted to accommodate the equal protection claims of handicapped children. *Id.* at 3472. With these factors in mind, the Court concluded that where a handicapped child asserts a right to a free appropriate public education, and the EHA is available, a claim based either on the EHA or on the Equal Protection Clause may be brought *only* under the EHA. *Id.* at 3470. Hence, the plaintiffs were not entitled to fees on the basis of their § 1983 equal protection claims.

The Court was more circumspect in the way it handled the unaddressed due process claim. The Court raised but did not decide the issue of "whether the procedural safeguards set out in the EHA manifest Congress' intent to preclude resort to § 1983 on a due process challenge." *Id.* It was not necessary to resolve this threshold issue because the due process claim simply had no bearing on the substantive issue of the lawsuit—which agency was required to pay for the education of the minor handicapped plaintiff—and therefore could not support the award of fees. *Id.* at 3471.

The Board urges that *Smith* supports the district court's dismissal of the § 1983 claim. The Board, however, reads that decision more broadly than we do, and totally ignores the fact that the Court in *Smith*, admittedly in dicta, took pains to distinguish a due process claim from an equal protection claim.

*Smith* suggests that not all § 1983 claims are to be treated alike. Indeed, the Court expressly noted that the issue raised by an independent due process challenge "is not the same as that presented by a substantive equal protection claim to a free appropriate public education." *Id.* at 3470 n. 17. Further, "unlike an independent equal protection claim, maintenance of an independent due process challenge to state procedures would not be inconsistent with the EHA's comprehensive scheme." *Id.* at 3471 n. 17. Finally, speaking specifically to the issue of attorney's fees, the Court noted that Congress has not indicated "that agencies should be exempt from a fee award where plaintiffs have had to resort to judicial relief to force the agencies to provide them the process they were constitutionally due." *Id.*

■ In our view, the approach the Supreme Court employed in *Smith* counsels holding that where, as here, a party is denied due process by effectively being denied access to "the carefully tailored administrative and judicial mechanism" found in the EHA, *id.* at 3468, that party may seek relief under § 1983. The thrust of the Court's equal protection claim holding is unmistakable: Congress enacted the EHA, with its panoply of procedures, to clarify and make enforceable the handicapped child's right to a free appropriate public education. This right is grounded on the Equal Protection Clause.[6] Accord-

---

6. The Court repeatedly referred to Congress' desire to create a statutory avenue through which handicapped persons could secure what Congress perceived to be their equal protection right to a free appropriate education. *See Smith*, 104 S.Ct. at 3468 ("Congress intended handicapped children with constitutional claims to a free appropriate public education to pursue those

claims through the ... mechanism set out in the [EHA]"); *id.* (quoting S.Rep. No. 168, 94th Cong., 1st Sess. 6, *reprinted in* 1975 U.S.Code Cong. & Ad.News 1425, 1430) ("Congress ... recognized that in a series of 'landmark cases,' the right to an equal education opportunity for handicapped children had been established"); 104 S.Ct. at 3468 (quoting S.Rep. No. 168, 94th

ingly, a plaintiff asserting that *equal protection right* as a basis for relief understandably should do so via the EHA, with all that that implies. This rationale, however, breaks down in the facts of this case.

The EHA "establishes an enforceable substantive right to a free appropriate public education." *Id.* Moreover, Congress intended "the carefully tailored administrative and judicial mechanism" set forth in the EHA to be the vehicle to enforce that right. *Id.* The plain language of the statute itself, however, suggests that Congress must not have intended the EHA to be the exclusive method to redress *denial of access* to that very mechanism.

The EHA provides that "[a]ny party aggrieved by the findings and decision" resulting from the administrative proceeding may bring an action with respect to the complaint presented initially to educational authorities. 20 U.S.C. § 1415(e)(2). Additionally, the court, when reviewing the administrative proceedings, "shall receive the records of the administrative proceedings, shall hear additional evidence [upon request], and, basing its decision on the preponderance of the evidence, shall grant ... relief." *Id.* We believe that this language presupposes the existence of an administrative hearing or record. Moreover, the Supreme Court has instructed that this statutory language "is by no means an invitation to the [reviewing] courts to substitute their own notions of sound educational policy for those of school authorities." *Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051. Rather, the state administrative proceedings are to be given "due weight," mainly because "[t]he primary responsibility for formulating the education to be accorded a handicapped child ... was left by the Act to state and local educational agencies in cooperation with the parents ... of the child." *Id.* at 207, 102 S.Ct. at 3051. The Court therefore also has made it clear that the principal office of a court proceeding under the EHA is to *review* the administrative determinations contemplated by the Act. With these principles in mind, we conclude that where, as here, the local educational agency deprives a handicapped child of due process by effectively denying that child access to the heart of the EHA administrative machinery, the impartial due process hearing, an action may be brought under § 1983.

Post-*Smith* case law supports our conclusion. In *Rose v. Nebraska*, 748 F.2d 1258 (8th Cir.1984), the plaintiff brought suit under the EHA, § 1983, and § 504 of the Rehabilitation Act. The § 1983 claim was that the hearing procedures adopted by the state destroyed the impartiality of the due process proceeding, in violation of the Due Process Clause of the Fourteenth Amendment. The district court granted injunctive relief. After two appeals, the district court finally awarded, pursuant to § 1988, attorney's fees for services rendered in connection with the successful request for an injunction.

Characterizing the § 1983 "due-process-type" claim as "parallel" to the EHA claim, the court affirmed the award of attorney's fees. *Id.* at 1261. The court's position was that *Smith* "rather strongly [implied] that an independent due-process claim, based on § 1983, [did] lie" under the facts before it. *Id.* at 1263. The court reasoned that "notwithstanding the fact that the same theory is also the basis for a claim under the [EHA] itself," *id.*, the clear implication of the Court's discussion in *Smith* concerning a due process challenge is "that a § 1983 suit and a fee award are appropriate when a plaintiff claims that he is being denied

Cong., 1st Sess. 13, *reprinted in* 1975 U.S.Code Cong. & Ad.News 1425, 1437) (" 'It is the intent of the Committee ... to provide assistance to the States in carrying out their responsibilities under ... the Constitution of the United States to provide equal protection of the laws' "); 104 S.Ct. at 3470 ("Congress perceived the EHA as the most effective vehicle for protecting the con-

stitutional right of a handicapped child to a public education"); *id.* at 3472 ("[I]n enacting the EHA, Congress was aware of, and intended to accommodate, the claims of handicapped children that the Equal Protection Clause required that they be ensured access to public education.").

due process" because of the partiality of the EHA administrative hearing. *Id.*

A recent Fifth Circuit decision also is instructive. In *Teresa Diane P. v. Alief Independent School District,* 744 F.2d 484 (5th Cir.1984), the plaintiffs brought suit alleging that the defendants denied Diane a free appropriate public education in violation of the EHA, the Rehabilitation Act, and § 1983. The plaintiffs also alleged that the defendants denied Diane procedural due process by failing "to adhere to the specific procedural safeguards provided by the Texas Education Agency pursuant to the [EHA]," in violation of § 1983. *Id.* at 491. After the plaintiffs were awarded a preliminary injunction, the parties settled the case. The district court awarded attorney's fees to the plaintiffs pursuant to the Rehabilitation Act, 29 U.S.C. § 794a(b), *see supra* note 5, and § 1988. The defendants appealed.

The Fifth Circuit, relying on *Smith,* concluded that attorney's fees could not be awarded: (1) for representation done in connection with the administrative procedures under the EHA; (2) for work attributable to the § 1983 claim based either on the EHA or an equal protection theory; or (3) for time spent on the Rehabilitation Act claim. *See infra* note 9. The court, however, treated the § 1983 procedural due process claim differently. Mindful of the distinction made by the Supreme Court in *Smith* between an equal protection claim and a due process claim, the Fifth Circuit held that "attorney's fees may be appropriate in [EHA] cases where procedural due process claims are involved," *Teresa Diane P.,* 744 F.2d at 491, and remanded the case on "the issue of whether substantial procedural due process claims were effectively raised and maintained." *Id.*

We find additional support for our decision in a recent Eleventh Circuit case. This court, in *Victoria L. v. District School Board,* 741 F.2d 369 (11th Cir.1984), affirmed the district court's summary judgment in favor of the defendant school board. The significance of this case, however, is not its holding; rather, for our purposes, the most important aspect of the case is the manner in which it reached that holding.

This court, on the basis of *Smith,* concluded that the plaintiffs could not assert their equal protection claim under either the Rehabilitation Act or the Fourteenth Amendment since the EHA is the " 'exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education.' " *Id.* at 372 (quoting *Smith,* 104 S.Ct. at 3468). The plaintiffs' procedural due process claim, however, was not disposed of quite so summarily.

We initially noted that in *Smith* the Supreme Court did not resolve the § 1983— EHA/exclusivity issue when a due process claim is involved. *Victoria L.,* 741 F.2d at 372. Rather than simply holding that a due process challenge could not be maintained apart from the EHA, we assumed that the conclusory allegations in the complaint that the defendants violated the Fourteenth Amendment by failing to comply with the procedural provisions of the EHA were sufficient to state a constitutional claim. *Id.* We held that summary judgment for the defendants was proper, however, because a review of the record revealed that the defendants in no way contravened the procedural requirements of the EHA. That review would have been unnecessary had we not recognized that a due process challenge, at least in certain circumstances, could be maintained outside of the EHA.[7]

In short, based on the language of the EHA itself, the *Smith* decision, and post-

---

7. The plaintiffs also rely on a pre-*Smith* case decided by the Second Circuit. In *Quackenbush v. Johnson City School Dist.,* 716 F.2d 141 (2d Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984), the plaintiff alleged, *inter alia,* that through a policy of the school district, her handicapped son was deprived of a free appropriate public education

and the opportunity to avail himself of the procedural safeguards established in the EHA. The plaintiff, who sought damages, brought the action under the EHA, the Rehabilitation Act, and § 1983.

The Second Circuit recognized that "the judicial review contemplated by § 1415(e)(2) is the exclusive means for reviewing a *final* adminis-

*Smith* case-law, we hold that the district court erroneously dismissed plaintiffs' § 1983 due process claim. We accordingly remand on that issue.

## IV. (b) THE REHABILITATION ACT

■ The Maneckes next argue that the district court should not have dismissed their claim brought under § 504 of the Rehabilitation Act. We disagree.

"The Rehabilitation Act of 1973 establishes a comprehensive federal program aimed at improving the lot of the handicapped." *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, ——, 104 S.Ct. 1248, 1250, 79 L.Ed.2d 568, 573 (1984). Section 504 of the Rehabilitation Act provides in pertinent part:

No otherwise qualified handicapped individual in the United States ... shall,

solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....

29 U.S.C. § 794. Unlike the EHA, "§ 504 does not require affirmative action on behalf of handicapped persons, but only the absence of discrimination against those persons." *Smith*, 104 S.Ct. at 3473; *see Southeastern Community College v. Davis*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979).

The district court ruled, as a matter of law, "that there is no private right of damages under Section 504 in this Circuit." *Manecke*, 553 F.Supp. at 790. The Board argues that this conclusion is correct,[8] and, in any event, *Smith* requires an affirmance

---

trative decision under the EHA," *id.* at 147 (emphasis in original), yet rejected the defendants' argument that the plaintiff could seek relief solely under the EHA. The plaintiff alleged that defendants' conduct deprived her and her son of the chance to utilize the EHA's procedural safeguards. The plaintiff and her son therefore moved to another school district and never filed an administrative complaint. In these circumstances, the *Quackenbush* court reasoned that judicial review was not expressly provided by the EHA because the plaintiff was not a "party aggrieved by the findings and decision" following an administrative due process hearing. *Id.; see* 20 U.S.C. § 1415(e)(2). The court also consulted the legislative history of the EHA, and found that Congress had not indicated which remedy will lie for deprivation of § 1415 procedural safeguards. *Quackenbush*, 716 F.2d at 147. The court concluded that § 1983, not an implied cause of action under § 1415(e)(2), supplies "the right of action to a plaintiff who has been denied procedural safeguards under § 1415 and who, as a result thereof, has not received the findings and decision following the impartial due process administrative hearing contemplated by § 1415." *Id.* at 148.

*Quackenbush* has been questioned in light of the recent *Smith* decision. *See DeLeon v. Susquehanna Community School Dist.*, 747 F.2d 149, 150 n. 1 (3d Cir.1984) (*Quackenbush* holding that "§ 1983 is available to fill in the 'gap' in the EHA remedies" has been "called into serious question" by *Smith*). It is, however, difficult to ignore the plain language of § 1415(e)(2) with its references to antecedent administrative proceedings. We note that the continued vitality of *Quackenbush* was recently affirmed by a district court sitting in the Second Circuit. *See Blaze-*

*jewski v. Bd. of Educ.*, 599 F.Supp. 975 (W.D.N.Y.1985) (court relied on *Smith* and *Quackenbush* to award attorney's fees to prevailing plaintiff).

We agree that *Quackenbush* supports our § 1983 holding in this case. We concur in principle with the conclusion implicit in the Second Circuit's holding that § 1983 may be used to seek relief for a deprivation of due process rising to the level of denial of access to the impartial hearing mechanism. Beyond this, we need not, and therefore do not, express any opinion on the soundness of the Second Circuit's opinion.

**8.** What the law is concerning the available remedies for a violation of § 504 has been called a "murky question." *Parks v. Pavkovic*, 753 F.2d 1397, 1409 (7th Cir.1985). We agree. The issue of money damages appears to be an open one in the Supreme Court. *See Smith*, 104 S.Ct. at 3473 n. 24. ("Without expressing an opinion on the matter, we note that courts generally agree that damages are available under § 504....."). Much of the confusion has been engendered by the interplay between § 504 and § 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., which prohibits discrimination on the basis of race, color, or national origin in federally-assisted programs.

Congress, in 1978, amended the Rehabilitation Act and, pursuant to § 505(a)(2), 29 U.S.C. § 794a(a)(2), made available the "remedies, procedures, and rights" found in Title VI to anyone discriminated against in violation of § 504 of the Act. The district court understandably consulted circuit precedent on Title VI relief. *See Drayden v. Needville Indep. School Dist.*, 642

of the district court.[9] We need not address either of these contentions, however, because we hold that plaintiffs have not alleged sufficient facts to state a claim under § 504, regardless of whether damages may be recovered under that statute.

In their amended complaint, the plaintiffs alleged, in the words of the district

court, "the denial of an impartial hearing to determine Lauren's residential placement." *Id.* at 790 n. 4. They did not allege, however, that Lauren was excluded from participation in, denied the benefits of, or subjected to discrimination under a program or activity receiving federal funding. They accordingly failed to allege a violation of

F.2d 129, 133 (5th Cir.1981) (Title VI relief limited to cessation of discriminatory activity; backpay or other losses not recoverable). Relying on *Drayden*, the district court concluded that damages similarly could not be recovered under § 504. *Manecke*, 553 F.Supp. at 790.

After the district court dismissed the § 504 claim, however, this court decided *Powell*, 699 F.2d 1078. In that case we observed, citing *Monahan v. Nebraska*, 687 F.2d 1164, 1170 (8th Cir.1982), *cert. denied*, 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983), and *Miener v. Missouri*, 673 F.2d 969, 979 (8th Cir.), *cert. denied*, 459 U.S. 909, 916, 103 S.Ct. 215, 230, 74 L.Ed.2d 171, 182 (1982), that § 504 "has been interpreted to provide a cause of action for compensatory damages." *Powell*, 699 F.2d at 1082. We affirmed the district court's refusal to award damages, though, because we were unable to discern any unlawful discrimination.

Four months after this court decided *Powell*, the Supreme Court handed down *Guardians Ass'n v. Civil Serv. Comm'n.*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), a badly fragmented decision which construed Title VI. Although none of the various opinions garnered majority support, a reading of them reveals that at least five Justices would not allow *compensatory* relief to a private plaintiff under Title VI absent proof of discriminatory intent. *See id.* 103 S.Ct. at 3235 n. 27. More recently, the Supreme Court, in. *Consol. Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984), explicitly applied Title VI jurisprudence to a § 504 claim. The plaintiff in *Darrone* brought suit under § 504 for backpay. Mindful of the 1978 amendments to the Rehabilitation Act, the court found it necessary to examine its Title VI decision in *Guardians*. The Court stated: "In *Guardians* ... a majority of the Court expressed the view that a private plaintiff under Title VI could recover backpay; and no members of the court contended that backpay was unavailable, at least as a remedy for intentional discrimination." *Id.* 465 U.S. at ——, 104 S.Ct. at 1252, 79 L.Ed.2d at 574. The Court applied this interpretation of Title VI to the § 504 claim before it, and concluded "that § 504 authorizes a plaintiff who alleges intentional discrimination to bring an equitable action for backpay." *Id.* 465 U.S. at ——, 104 S.Ct. at 1252, 79 L.Ed.2d at 574. The Court unfortunately did not determine "the extent to which money damages are available under § 504." *Id.*

At least one circuit, the new Fifth, reads *Guardians*, as did the Court in *Darrone*, as fully applicable in the § 504 context. In *Marvin H. v. Austin Indep. School Dist.*, 714 F.2d 1348 (5th Cir.1983), the court held in a case brought under the EHA and § 504 that, in the absence of intentional discrimination, an action for damages under § 504 must fail. *Id.* at 1357; *see Scokin v. Texas*, 723 F.2d 432, 441 (5th Cir. 1984). A recent Fifth Circuit case, relying on *Marvin H.*, held the dismissal of a § 504 claim for damages proper where the plaintiff failed to allege "that the School Board intended to place his children in inappropriate classes or that his children's placement manifested discriminatory animus." *Carter v. Orleans Parish Public Schools*, 725 F.2d 261, 264 (5th Cir.1984) (footnote omitted). In light of our disposition of the § 504 issue, we have no occasion to determine whether *Guardians* and *Darrone* compel the holdings of *Marvin H.* and its Fifth Circuit progeny.

9. In *Smith*, the Supreme Court rejected the plaintiffs' claim that the attorney's fees awarded by the district court were justified because they asserted a substantial claim under § 504. The Court reasoned that, in the facts of that case, § 504 added nothing to the substantive rights of the plaintiffs who were claiming a free appropriate public education. To allow the § 504 claim therefore would only frustrate Congress' intent in enacting the EHA: a § 504 plaintiff might circumvent the state administrative procedure established by the EHA, might be awarded damages where none would be available under the EHA, and, if successful, might be awarded attorney's fees. *Smith*, 104 S.Ct. at 3472-73. The Court concluded: "Where § 504 adds nothing to the substantive rights of a handicapped child, we cannot believe that Congress intended to have the careful balance struck in the EHA upset by reliance on § 504 for otherwise unavailable damages or ... attorney's fees." *Id.* at 3474. *See Irving Indep. School Dist. v. Tatro*, —— U.S. ——, 104 S.Ct. 3371, 3379, 82 L.Ed.2d 664 (1984) ("§ 504 is inapplicable when relief is available under the [EHA] to remedy a denial of ... educational services.").

The Maneckes contend that *Smith* does not require a dismissal of their § 504 claim because this case presents "a situation where the EHA is not available." *Smith*, 104 S.Ct. at 3474. In light of our holding, we need not rule on this issue.

§ 504. We affirm the district court's dismissal of plaintiffs' § 504 claim.

## V. REMAINING ISSUES

The Maneckes assert that the district court erred in applying to this case our decision in *Powell,* 699 F.2d 1078, and the Seventh Circuit's decision in *Anderson,* 658 F.2d 1205. They also argue that the district court exceeded its authority under the EHA when it held, without the benefit of an administrative record, that the Board "did provide Lauren with [a free appropriate public] education." Had the district court not erroneously dismissed the § 1983 claim, it would never have placed itself in the position of trying an EHA claim.[10] We therefore offer only a few brief observations on the last two issues raised by the plaintiffs.

The Maneckes' amended complaint alleged violations of § 504 of the Rehabilitation Act and § 1983. The district court dismissed both claims. Thereafter, a second amended complaint was filed under the EHA. Following a bench trial, the court dismissed the EHA claim. The court relied on *Powell* and *Anderson. See supra* note 2.

Both *Powell* and *Anderson* are distinguishable from this case in at least two respects. First, both of those cases antedated the Supreme Court's *Smith* decision. Second, in both *Powell* and *Anderson* the plaintiffs were given the opportunity to use, and in fact did use, the state administrative process. *See Powell,* 699 F.2d at 1080; *Anderson,* 658 F.2d at 1207–08. Therefore, the trial courts, unlike the district court in this case, had before them "aggrieved parties" and "records of administrative proceedings" within the meaning of the EHA.

 Further, as we read the EHA, a trial court generally should not decide in a trial on the merits whether or not a handicapped child has received a free appropriate public education under the EHA absent an administrative record of the sort contemplated by 20 U.S.C. § 1415. In the words of the Supreme Court, "the Act permits '[a]ny party aggrieved by the findings and decision' of the *state administrative hearings* 'to bring a civil action' in 'any State court of competent jurisdiction or in a district court of the United States.'" *Rowley,* 458 U.S. at 204, 102 S.Ct. at 3050 (quoting 20 U.S.C. § 1415(e)(2)) (emphasis added). Indeed, in *Rowley* the plaintiffs brought suit "[p]ursuant to the Act's provision for judicial review," *Rowley,* 458 U.S. at 185, 102 S.Ct. at 3040, only after the decision of a hearing examiner was affirmed on appeal by the state Commissioner of Education. Moreover, the Act requires the reviewing court to *receive the records* of the state administrative proceeding and hear *additional* evidence if requested to do so. 20 U.S.C. § 1415(e)(2). The clear implication of the language in § 1415(e)(2) is that the function of a court under the EHA is, in the usual case, confined to that of *reviewing* administrative proceedings, not determining *in the first instance* the appropriateness of a handicapped child's education. *Cf. Rowley,* 458 U.S. at 206, 102 S.Ct. at 3050 ("due weight" must be accorded state administrative proceedings); *Town of Burlington v. Department of Education,* 736 F.2d 773, 790 (1st Cir.1984) (although the EHA authorizes the trial court to base its decision on the preponderance of the evidence, "the Act contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial"), *aff'd sub nom. Burlington School Committee v. Department of Education,* —— U.S. ——, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). When the court has completed its review, it then may grant such relief as it determines is appropriate, including retroactive reimbursement to parents. *See Burlington*

---

**10.** The Maneckes cannot be faulted for asserting an EHA violation in their second amended complaint. As we stated in Part IV(a), the district court erred in dismissing the Maneckes' § 1983 claim. That dismissal effectively forced the Ma-

neckes to amend their complaint to allege a violation of the EHA, the only remaining relevant statute arguably entitling them to the relief sought.

*School Committee,* —— U.S. at ——, 105 S.Ct. at 2002.

## VI. DAMAGES

Given its rulings, the district court never reached the issue of reimbursement. Since a remand of the § 1983 claim is indicated, we make the following observations which the district court should find useful in determining the amount of reimbursement to be ordered, if any is to be ordered at all. We hasten to add that in making these comments, we do not intend to limit the trial court's inquiry on the damages issue.

We are not remanding this case for an entry of judgment for a sum certain. Rather, on remand the district court's task is to determine the damages that flow from the due process violation. Although the record before us has not been developed to any great extent on the damages issue, there are suggestions in it that cause us some concern.

Lauren was enrolled in Devereux from March 21, 1980, until December 31, 1981, when she graduated. The Maneckes seek reimbursement in the amount of $40,000 for tuition paid and related expenses. It seems, however, that Lauren did not begin her academic classes until September, 1980. The Board, in its Proposed Findings of Fact and Conclusions of Law, indicates that Lauren contracted mononucleosis shortly after she began at Devereux and was unable to attend any academic classes for March and April of 1980. Record, Vol. 2 at 384. Additionally, during the summer months of that year, Lauren apparently was not enrolled in any academic classes at all. *Id.* Although the parties have not briefed the issue, it seems to us that if these indeed are the facts, the Board may not be obliged under the EHA or any other statute to pay for boarding unaccompanied by academic classes. The district court should address itself to this question.

Perhaps more important is the Maneckes' refusal to agree to a due process hearing after Lauren was removed from Nina Harris and enrolled in Devereux. The Maneckes received a form in July, 1980, which

if completed, would serve as a formal request for a due process hearing. The form was not returned to the Board, and a hearing accordingly was not scheduled. Additionally, the Board, in consultation with counsel for the Maneckes, scheduled a due process hearing for January 26, 1981. The hearing was cancelled at the Maneckes' request. As we view the case, there is a serious question that damages, if there were any, ceased accruing when the Board ceased violating the Maneckes' due process rights. If the facts conform to the Board's version, the Board may not be liable for *any* reimbursement.

## VII. CONCLUSION

We hold that the district court erred when it dismissed plaintiffs' § 1983 claim alleging a deprivation of due process by virtue of the Board's failure to provide them with a timely impartial due process hearing. Lest our holding be broadly construed, we now emphasize its narrowness. We do not hold that § 1983 may be employed whenever a procedural deprivation occurs in the EHA context. We simply conclude that, under the facts of the instant case, the plaintiffs properly invoked § 1983. We affirm the district court's dismissal of the § 504 claim, though for reasons not cited by the district court. We further hold that because of the district court's § 1983 ruling, it improvidently addressed the EHA claim. On remand, the district court shall determine what damages, if any, the plaintiffs sustained as a result of the Board's deprivation of their right to due process.

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.