**Maxine GILBERT**

v.

**WEST GEORGIA MEDICAL CENTER AUTHORITY, et al.**

Civ. A. No. C83–44N.

United States District Court,
N.D. Georgia,
Newnan Division.

March 30, 1985.
On Motion for New Trial June 24, 1985.

Janet Hill, Nelson & Sweat, Athens, Ga., for plaintiff.

Bennet Alsher, Clark, Paul, Hoover & Mallard, Atlanta, Ga., for defendants.

## ORDER

G. ERNEST TIDWELL, District Judge.

The above-styled matter came for trial before the court without a jury on December 10–11, 1984. This order constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.

## FINDINGS OF FACT

1.

Plaintiff Maxine Gilbert is a black female, citizen of the United States and a resident of the State of Georgia. Defendant West Georgia Medical Center, Inc. ("West Georgia" or "Hospital" is a public, non-profit hospital located in LaGrange, Georgia. Defendant Prescha Meelaphsom was, at all times relevant to this action, the department manager in the Hospital's Department of Pulmonary Medicine. Defendant G.J. Giesler, Jr., was, at all times relevant to this action, the Medical Director of the Hospital's Department of Pulmonary Medicine. Meelaphsom is sued individually and in his official capacity; Dr. Giesler is sued only in his official capacity.

2.

Approximately 80% of the Hospital's employees are female and 20%–30% are black.

3.

Defendant Hospital's Articles of Incorporation indicate that a significant relationship exists between the governmental bodies of LaGrange and Troup County and the West Georgia Medical Center. Until 1975, the name of West Georgia Medical Center, Inc. was "City-County Hospital." All amendments to the Articles of Incorporation require the assent of the Mayor and Council of the City of LaGrange and of the Board of Commissioners of Troup County. The original petition for incorporation states that the corporation "shall be a charitable corporation to be operated as an agency of the City of LaGrange and County of Troup, to perform a governmental function ... and to promote the sanitary activities of the county government and of the City of LaGrange." Two members of the Board of Trustees are appointed by the Mayor and Council of the City of LaGrange, and two board members are appointed by the Board of Commissioners of Troup County.

The Hospital budget is submitted yearly by the Board of Trustees to the Mayor and Council of the City of LaGrange and to the Commissioners of Troup County who must approve the budget. The evidence indicates that from 1977 through the present, the Board of Commissioners of Troup County authorized approximately $50,000.00 per year to the Hospital. In addition, the Articles of Incorporation provides that the Mayor and City Council of LaGrange and the Commissioners of Troup County must consent to a decision by the Board of Trustees for the corporation "to wind up its affairs, liquidate and discontinue its business and the business of said Hospital, at which time, the net assets of the corporation shall be distributed to the City of LaGrange and the County of Troup."

The evidence indicates that Hospital construction is financed by a three million dollar obligation bond approved and paid for by the taxpayers of Troup County. The Hospital also submits reports to the Equal Employment Opportunity Commission on the EEO–4 form entitled "State and Local Government Information." On that form, the Hospital describes itself as a "city-county" type of government.

4.

Plaintiff was employed by the Hospital from July 14, 1980 until September 15, 1982. She was initially hired by the Hospital as a certified eligible therapist. She worked in the Department of Pulmonary

Medicine as a respiratory therapy technician. She was discharged from her employment, because on or about September 13, 1982, without authorization from her supervisor, she changed the department work schedule. Plaintiff alleges that defendants discriminated against her for failing to promote her to the position of clinical supervisor in the Department of Pulmonary Medicine; by discharging her; and by retaliating against her by giving her bad job references to prospective employers. Plaintiff filed charges of discrimination with the E.E.O.C. on September 24, 1982; amended charges were filed on November 15, 1982 and on March 2, 1983. She received a right to sue letter on April 15, 1983. The E.E.O.C. did not issue a determination on the merits on any of plaintiff's charges of discrimination. Plaintiff alleges causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §§ 1981, 1983 and the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution.

5.

During the trial the court ruled from the bench that there was no evidence of retaliation and granted the defendants' motion to dismiss that claim. The only issues remaining before the court are plaintiff's promotion and discharge claims.

6.

There are three basic levels of respiratory therapist. The most advanced level requiring the greatest amount of education and training, is that of a registered respiratory therapist (RRT). An individual who has obtained this level has passed the National Board of Respiratory Therapy (NBRT) written examination and has received a certain amount of education. The second level is a certified respiratory therapy technician (CRTT). This level requires a certain amount of experience and education, along with a one year program in respiratory therapy. The lowest level is that of a non-credentialed technician. A person in this level has met certain minimum educational requirements such as earning a high school diploma and may have some background or experience in medically-related fields.

7.

The plaintiff has never been certified as a CRTT or RRT. The plaintiff has twice taken the exam for registry, and failed the exam both times. The plaintiff also took an exam for CRTT and failed that exam.

*Promotion Claim*

8.

In May, 1982, a vacancy arose for the position of clinical supervisor on the second shift in the Department of Pulmonary Medicine. Three individuals were considered for this vacancy: the plaintiff; Tina Holmes, a white female; and Mike McArthur, a white male. Holmes told Meelaphsom that she did not want to be considered for the position; therefore, the choice was narrowed down to McArthur and the plaintiff. The promotion eventually went to McArthur. The alleged qualifications for the position were:

*Education*

    A. Credentialed by the NBRT as RRT or CRTT;

    B. acquired an ACLS provider certificate;

    C. certified to be a critical care respiratory therapist by the Department of Pulmonary Medicine.

*Experience*

    A. Field experience in respiratory therapy at a minimum of 3 years;

    B. preferred management and supervisory skill;

    C. exhibited some leadership in clinical and management areas.

Although plaintiff was not credentialed by the NBRT, she was considered eligible. Tina Holmes was RRT eligible and Mike McArthur was CRTT. Both McArthur and the plaintiff were given supervisory training in the spring of 1982.

9.

Wanda Dillard, a black female hired at the same time as plaintiff, was promoted in

October 1980 to clinical supervisor. Angela Rudd, a white female, was promoted to clinical supervisor in December, 1980. Godfrey Griffin, a black male, was offered a promotion to clinical supervisor in 1983 but declined it. All of these individuals were CRTT.

10.

█ Even though plaintiff was qualified for the position of clinical supervisor, the court finds that defendants promoted Mr. McArthur because he was equally or better qualified for the position than plaintiff and not for the reasons of race or sex. The evidence showed:

(a) McArthur had prior management and supervisory experience both at a hospital in Vidalia and at West Georgia Medical Center;

(b) he was considered superior to the plaintiff in his clinical skills in that he was better able to deal with patients, and he exhibited better skills, knowledge, and judgment in critical care situations;

(c) he was able to interact better with both his peers and his supervisors in the department;

(d) he was credentialed by the National Board of Respiratory Therapy as a CRTT.

On the other hand, plaintiff was not credentialed by the NBRT as a CRTT. The evidence showed that during the course of plaintiff's employment at the Hospital, she had a series of altercations with her supervisor and had trouble getting along with her peers. She also had trouble working with other people.

It appears that McArthur had, at the time he was promoted to supervisor, almost 12 years of field clinical experience whereas the plaintiff had only approximately six years of such experience. McArthur had completed extensive studies in respiratory care; plaintiff had only a six week course. McArthur had prior experience as a shift supervisor; plaintiff had none. McArthur showed an ability to get along with his co-workers; plaintiff did not. Although there is some evidence to indicate that McArthur's record was flawed, the court is of the opinion that defendants in good faith believed him to be the better qualified candidate and for that reason promoted him instead of plaintiff.

*Discharge claim*

11.

West Georgia has a system of progressive discipline which requires that employees be warned about conduct which is not serious enough to require immediate discharge. Depending upon the offense, corrective action which may be taken with respect to an employee includes oral warning, written warning, suspension, and finally discharge. Different offenses may require a different level of discipline. Both black and white employees have been discharged by the Hospital without using the Hospital's warning form. The Hospital's discipline policy states that employees may be discharged for other deeds of misconduct, not specifically listed in the policy. Falsification of an official Hospital record is grounds for immediate discharge.

12.

Plaintiff was suspended for a period of three days on April 18, 1982, for insubordination. Plaintiff did not receive any other written warnings pursuant to the progressive discipline system.

13.

█ On or about September 13, 1982, plaintiff changed the department work schedule without authorization from her supervisor. Testimony indicated that on September 13, plaintiff had changed the block in the schedule to indicate a labor day holiday, meaning she wanted to take her labor day holiday on September 13. A memorandum from supervisor Bob Rich came to Meelaphsom indicating that she had changed the schedule without permission from either Rich or McArthur. McArthur testified that the initials "MMC" in the boxes on the schedule dated September 4 and September 10 were not made by him. Thus, information reached Meelaphsom that plaintiff had not only changed the schedule without authorization but had also falsified McArthur's signature or initials.

While there is some evidence to indicate that employees could make schedule changes themselves if their supervisor later approved of such a change, testimony from plaintiff's colleagues and supervisors also revealed that they did not give her permission to change the work schedule. Bob Rich and Michael McArthur, clinical supervisors on duty September 10, 1982, both testified that they did not authorize plaintiff to change the schedule or take a labor day holiday on September 13, 1982. Plaintiff's testimony that her supervisors authorized her to change the work schedule and take her labor day holiday on September 13 is not credible.

14.

After Meelaphsom was notified by Rich that the schedule had been changed, he checked the schedule himself to verify the information. Meelaphsom testified that Rich told him that there was not going to be any critical care coverage that evening. The department was counting on plaintiff to show up for work that evening. Meelaphsom tried to call the plaintiff but could not reach her. Someone had to come in to take plaintiff's place on that day.

15.

On September 13, after hearing that plaintiff changed the work schedule without authorization, Meelaphsom reviewed plaintiff's file. He consulted with assistant administrator, George Kish, associate administrator Bill Richardson, and medical director Dr. Giesler. Meelaphsom recommended termination. Plaintiff was terminated on or about September 15, 1982 for violation of Hospital policy. The Hospital has discharged white males for violation of Hospital policy. There are no instances in the record of a circumstance identical to plaintiff's. There are, however, instances where white male and female employees were discharged for falsifying records.

16.

█ Whether or not plaintiff's actions constituted a falsification of official hospital records, the court concludes that the discharging employers in good faith thought it was, and believing it discharged plaintiff. Although there are no instances of similar situations leading to dismissal, there is no credible evidence that plaintiff was dismissed because of either her race or her sex.

17.

█ Meelaphsom does not use the Hospital warning form in administering discipline. His practice is to communicate verbally, and then to document an incident by memorandum when necessary. This practice applies to all personnel in his department, both black and white, male and female. All employees are aware that Meelaphsom keeps records and notes of discussions, as well as copies of memos and letters that he prepares. Plaintiff was aware of this practice. Evidence was introduced that other employees besides plaintiff were discharged without official hospital warning forms in their files. Many of these employees were white and/or male. There is no indication that Meelaphsom's failure to follow procedures was motivated or applied in a racially or sexually discriminatory manner.

CONCLUSIONS OF LAW

The Court has jurisdiction over this action under 28 U.S.C. § 1343, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the Fourteenth Amendment to the United States Constitution. Plaintiff has met the necessary conditions precedent to suit under Title VII by filing a timely charge with the Equal Employment Opportunity Commission and by filing this action within 90 days of her receipt of Notice of Right to Sue from the Commission.

█ Plaintiff must show two elements in order to state a claim under 42 U.S.C. § 1983. She must show that she was deprived of rights secured to her by the laws or Constitution of the United States, and that defendants acted under color of law. The court concludes based upon the Find-

ings of Fact that a sufficiently close connection exists between the Hospital and the City of LaGrange and the County of Troup to find that defendants acted under color of law.

Defendants have shown that the decision to promote Michael McArthur had nothing to do with plaintiff's race or sex, but was instead based on McArthur's superior job performance and knowledge.

■ The court finds that assuming, *arguendo*, plaintiff has established a *prima facie* case of discrimination for the Hospital's refusal or failure to promote her, the defendant has articulated a legitimate, non-discriminatory reason for promoting McArthur instead of the plaintiff. Since the Court finds that defendants have met the burden of articulating a legitimate, non-discriminatory reason for not selecting plaintiff for promotion, the burden shifts to plaintiff to prove by a preponderance of the evidence that the articulated reason was merely a pretext for discrimination.

The evidence showed that Michael McArthur was better qualified for the position of clinical supervisor than was the plaintiff because of McArthur's superior clinical skills and experience. This experience was a legitimate, non-discriminatory reason for promoting McArthur, and not the plaintiff. Accordingly, the burden was on the plaintiff to show that the Hospital's proffered reason was pretextual. Plaintiff has failed to show that she was not promoted on account of her race or her sex. Therefore, the court finds that plaintiff has failed to prove by a preponderance of the evidence that defendants unlawfully denied her a promotion in violation of Title VII, 42 U.S.C. § 1981 or 42 U.S.C. § 1983.

■ Plaintiff's claim of discrimination in her discharge fails as well. Assuming again that plaintiff has established a *prima facie* case, the defendants have articulated a legitimate, non-discriminatory reason for discharging plaintiff. Therefore, in order to prevail, the plaintiff must demonstrate that the proffered reason was not the true reason for the employment deci-

sion. The plaintiff may satisfy this burden if she can persuade the court that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence.

The court finds that plaintiff has not carried her burden. The evidence presented in this case falls far short of clear and convincing evidence that defendants were in any way motivated by racial or sexual reasons in discharging plaintiff. After hearing all the testimony, this court is convinced that the defendants believed plaintiff had falsified an official hospital record and in good faith discharged her for that reason.

■ Plaintiff also claims that her discharge violated her rights to equal protection of the law. The Equal Protection Clause in the context of a discharge case does not require that all persons be treated identically. If distinctions between similarly situated individuals are to withstand an equal protection analysis, such distinctions must be reasonable, not arbitrary, and must rest on grounds having a fair and substantial relation to the object of the rule. If the defendants offer a rational justification for the plaintiff's discharge because of her violation of Hospital policy, then plaintiff's equal protection claim must fall. The court finds as a matter of law that defendants have offered a legitimate, rational justification for plaintiff's discharge, and accordingly find that defendants have not violated plaintiff's right to equal protection of the law. Plaintiff has come forward with no evidence that the Hospital treated similarly situated individuals differently from her. In the cases which plaintiff suggests show she was treated differently defendants have offered a rational explanation for those differences in treatment. There is no evidence before this court that persons who did the same thing plaintiff did were treated differently from plaintiff nor has there been any showing that members outside the protected class benefited from a more lenient policy.

■ Finally, plaintiff contends that defendants violated her rights under the due

process and equal protection clauses of the Fourteenth Amendment of the United States Constitution in that the defendants did not follow established Hospital discipline procedures when discharging plaintiff. Equal protection and due process demand at a minimum that a state actor apply its laws in a rational and non-arbitrary way. However, the uneven or erroneous application of an otherwise valid law or regulation constitutes denial of equal protection only if it represents intentional or purposeful discrimination.

■ The plaintiff has not demonstrated that defendants' failure to follow any of the official procedures was in any manner discriminatorily applied or prejudiced plaintiff because of her race or sex. Every error or mistake in the application of policies does not rise to the level of a constitutional violation and it did not do so here.

Accordingly, the court finds for the defendant and the Clerk is directed to enter a judgment for the defendant.

## ON MOTION FOR NEW TRIAL

The above-styled matter is presently before the court on plaintiff's motion for a new trial, or in the alternative, to amend the judgment and on motion to stay the award of costs. In support of her motion for a new trial the plaintiff contends that this court's order filed April 2, 1985 contains errors of fact and law. Pursuant to the plaintiff's motion, the court has re-examined the evidence including a transcript of the proceedings prepared by the court reporter subsequent to the prior order.

Plaintiff argues that Finding of Fact No. 9 indicating that Wanda Dillard held a CRTT credential is in error. This Finding was premised on Mr. Meelaphsom's testimony which indicated that Ms. Dillard was CRTT. Further, defendants' exhibit No. 47 indicates that Wanda Dillard on October 28, 1980 was CRTT Registry Eligible. The court does not find any evidence that she did not have a CRTT or that plaintiff offered any evidence that she did not have a CRTT. Finding of Fact No. 9 relates primarily to the fact that females and blacks were promoted to the position plaintiff sought. Even assuming Ms. Dillard never became CRTT, this would not affect the result or the decision in this action.

Plaintiff also contends that there are errors in Finding of Fact No. 13 warranting a new trial or amended judgment. The court is of the opinion that no material error exists as to Finding of Fact No. 13. However, in order to clarify Finding of Fact No. 13, Finding No. 13 is amended as follows: The first sentence of Finding of Fact No. 13 is hereby deleted and the following is substituted in lieu thereof:

> After hearing all the evidence, including the testimony of the plaintiff, the court is convinced and therefore finds as a matter of fact that, on or shortly prior to September 13, 1982, the plaintiff changed the department work schedule. The court concludes and finds that this change was without authorization from her supervisor.

The remainder of plaintiff's claims for a new trial or to amend judgment based upon alleged errors of fact are meritless.

Plaintiff contends that the court made two errors of law as well. First, plaintiff argues that the court is incorrect in concluding that defendants did not violate plaintiff's equal protection or due process in failing to follow official procedures. The uneven or erroneous application of an otherwise valid law or regulation constitutes denial of equal protection only if it represents intentional or purposeful discrimination. *Harrington v. United States*, 673 F.2d 7, 10–11 (1st Cir.1982); *See also Powell v. Power*, 436 F.2d 84 (2d Cir.1970); *Whitney Stores, Inc. v. Summerford*, 280 F.Supp. 406 (D.C.S.C.1968), *aff'd* 393 U.S. 9, 89 S.Ct. 44, 21 L.Ed.2d 9 (1968). This requirement has been applied to internal rules and regulations such that a plaintiff claiming a denial of equal protection or due process resulting from the improper applications of regulations must establish that she reasonably relied on the regulations to her substantial detriment or that she suffered intentional and purposeful discrimina-

tion. *See e.g., Dowdy v. Johnson,* 510 F.Supp. 836, 838 (E.D.Va.1981); *Kelly v. Cooper,* 502 F.Supp. 1371, 1374–76 (E.D. Va.1980). Plaintiff was aware of the informal disciplinary procedures at the Hospital; there has been no showing of any substantial detrimental reliance. As stated before there has been no showing of intentional discrimination. "The acceptance of [plaintiff's] constitutional theory would render suspect each difference in treatment among [the employees], however lacking in racial motivation and however otherwise rational the treatment might be." *Jefferson v. Hackney,* 406 U.S. 535, 548, 92 S.Ct. 1724, 1732, 32 L.Ed.2d 285 (1972).

Plaintiff requests that the court find a violation of equal protection and due process because the actions by defendants were arbitrary and capricious. A review of all the evidence shows there were instances where whites and males were discharged by the same procedures used in this case. Some were for falsification of hospital records. The court is not persuaded that the actions in this case or the informal disciplinary policies applied to all employees were either arbitrary or capricious. *See also Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 2079–80, 48 L.Ed.2d 684 (1976). The application of the procedures under the facts of this case does not rise to the level of a constitutional violation. The court notes that Meelaphsom's failure to follow the exact procedures of the progressive discipline policy ultimately did not impact on her discharge as she was terminated for falsification of the hospital form.

■ Second, plaintiff argues that the court did not adequately consider whether plaintiff had proven pretext. Under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) if the defendants articulate a legitimate nondiscriminatory reason for plaintiff's termination, the plaintiff has the burden to prove by a preponderance of the evidence that the legitimate reasons offered by the defendants were not the true reasons, but were a pretext for discrimina-

tion. The plaintiff may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Id.* at 804–05, 93 S.Ct. at 1825–26. *See also McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). The plaintiff has not carried her burden in this respect. After considering all the testimony in this case and assessing each witness's credibility, the evidence strongly indicates that there were legitimate and nondiscriminatory reasons for the firing of plaintiff. If the discharge was for a lawful reason, even though defendants may have acted impulsively or on bad advice, then the defendants have not violated Title VII or § 1983. *Doe v. AFL–CIO,* 17 FEP cases 486, 488 (N.D.Ga.1975). Even if the court accepted plaintiff's arguments that in other circumstances whites may have been treated differently, the court is firmly convinced under the facts of this case that plaintiff's race or sex was not a cause of her termination. *See Santa Fe, supra* at 282 n. 10, 96 S.Ct. at 2580 n. 10.

Finally, the evidence in this case as a whole, including the court's evaluation of the plaintiff and her credibility, indicates that she was a poor employee who had difficulty in working with fellow staff members and patients. The plaintiff's employment history before and after her termination at West Georgia indicates that her overall job performance was poor notwithstanding some of her evaluations. Plaintiff was terminated because the defendants in good faith believed she had falsified a hospital form. The evidence indicated that defendants' motivation in this case was plaintiff's poor employment and not her race or sex. Regardless of any irregularities, if any, in plaintiff's discharge, the evidence indicated that plaintiff's termination would have been the ultimate outcome of her employment.

Plaintiff's motions for a new trial or to amend judgment and for stay of award of costs are denied.