Jane G. KRAFT, Plaintiff,

v.

MEMORIAL MEDICAL CENTER, INC., Defendant.

Civ. A. No. 492–144.

United States District Court,
S.D. Georgia,
Savannah Division.

Sept. 14, 1992.

ORDER

ALAIMO, District Judge.

On June 8, 1992, Plaintiff, Jane G. Kraft ("Kraft"), a nurse formerly employed by Defendant, Memorial Medical Center, Inc. ("MMC"), instituted this federal question action alleging MMC discriminated against her because of a handicap, in violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"), and the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("§ 1983"). Kraft asserts that her employment was improperly terminated on the basis of a handicap, and she seeks injunctive relief, compensatory damages and attorneys fees.

This case is presently before the Court on three motions by Defendant. First, pursuant to Rule 12 of the Federal Rules of Civil Procedure, MMC moved to dismiss the § 1983 claim for failure to state a claim. MMC subsequently converted this to a mo-

tion for summary judgment under Rule 56, asserting that there was no "state action" and that Kraft had no property interest in continued employment. Second, also pursuant to Rule 12, MMC moved to dismiss or strike the compensatory damages claim, alleging § 504 of the Rehabilitation Act does not authorize compensatory damages. Third, MMC moved to strike Kraft's request for a jury trial, asserting § 504 of the Rehabilitation Act is essentially equitable and, thus, there is no right to a jury trial.

For the reasons discussed below, summary judgment will be GRANTED for the Defendant on the § 1983 claim. The summary judgment ruling below will moot the Defendant's earlier motion to dismiss the § 1983 claim. Additionally, the Defendant's motion to dismiss or strike the compensatory damages claim and the Defendant's motion to dismiss Plaintiff's request for a jury trial will both be DENIED.

FACTS

In 1972, Kraft was involved in an automobile accident and suffered a closed-head injury resulting in, among other manifestations, slurred speech and difficulty with coordination. (Pl.'s Compl. at 2). Kraft contends that her condition rendered her a "handicapped individual" under § 7(7) of the Rehabilitation Act. In spite of her difficulties, Kraft was employed as a registered nurse by MMC from 1978 through 1991. She maintains that MMC knew she was a "handicapped individual," but that she was "otherwise qualified" for the employment. *Id.* at 2–3. In March of 1991, however, Kraft's employment was terminated, allegedly due to her handicap. She

claims MMC, citing the physical manifestations of her injuries, accused her of abusing drugs and terminated her employment. (Pl.'s Answer to Interrogs. at 2). Kraft asserts that physicians, chosen by MMC, examined her and found no evidence of drug use. Additionally, she states MMC could have made reasonable accommodations to continue her employment without significant cost or inconvenience to MMC and without detriment to the patients whom Kraft serviced. (Pl.'s Compl. at 3).

In contrast, MMC argues that from 1978 to approximately 1989, Kraft adequately performed her duties; however, from 1989 forward, her attendance record was spotty, and she frequently appeared to be impaired while on duty. (Def.'s Answer at 3). Thus, MMC claims Kraft's ability to perform the essential functions of a registered nurse was affected. Moreover, MMC contends it was not aware that Kraft was a "handicapped individual" and denies she was "otherwise qualified" throughout 1978 to 1989. *Id.*

DISCUSSION

I. *Section 1983 Claim*

█ Section 1983 provides a civil action for persons claiming violations of their rights secured by either the Constitution or by federal laws, "broadly encompass[ing] violations of federal statutory as well as constitutional law." *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980).[1] In the present action, Kraft alleges a § 1983 claim based on a violation of her rights created under the Rehabilitation Act.[2] As such, Kraft has

---

**1.** Section 1983, in pertinent part, provides:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.
   42 U.S.C. § 1983.

**2.** It is unclear from Kraft's Complaint whether she alleges any separate Constitutional violation. Any assertion of a procedural or substan-

tive due process violation, however, would not stand. For such a violation, a plaintiff must have a Constitutionally protected right. "The existence of a legitimate claim of entitlement to a property interest in continued employment is to be determined in accordance with state law." *Nicholson v. Gant,* 816 F.2d 591, 597 (11th Cir. 1987) (per curiam) (citing *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976)). Under Georgia law, "[a]n indefinite hiring may be terminated at will by either party." O.C.G.A. § 34–7–1 (1992). Thus, assuming Kraft were, in fact, a public employee, absent an employment contract altering her "at will" status, she has no entitlement to continuing employment. *See Wofford v. Glynn Bruns-*

asserted a statutory "laws" action, and she must show both a deprivation of a federal statutorily created right, privilege or immunity, and that she was deprived by MMC acting under "color of state law." *See, e.g., Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir.1992) (citing *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 156–57, 98 S.Ct. 1729, 1733–34, 56 L.Ed.2d 185 (1978)).

### Federal Statutorily Created Right

Initially, although neither party raised the issue, there is authority in the Eleventh Circuit for the proposition that a § 1983 "laws" claim may not be based on the Rehabilitation Act. The Supreme Court has established a statute-by-statute determination whether a federal statute may be the basis of a "laws" claim under § 1983. The two-part test requires: (1) the statute must create a federal right as shown by binding obligations on the government intended to benefit the plaintiff; and, (2) after the plaintiff has established the existence of the right, the defendant may show that Congress, by establishing a "comprehensive enforcement mechanis[m] for protection" of the right, intended to foreclose a § 1983 remedy. *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989) (quoting *Smith v. Robinson,* 468 U.S. 992, 1003, 104 S.Ct. 3457, 3463, 82 L.Ed.2d 746 (1984)).

Clearly, § 504 of the Rehabilitation Act creates a federal right. *See Consolidated Rail Corp. v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984). However, under the second part of the test in *Manecke v. School Bd.,* the district court held that the comprehensive remedial framework of § 504 of the Rehabilitation Act precluded a § 1983 remedy arising from a Rehabilitation Act violation. 553 F.Supp. 787, 790–91 (M.D.Fla.1982), *aff'd in part and rev'd in part,* 762 F.2d 912 (11th Cir.1985), *cert. denied,* 474 U.S. 1062,

106 S.Ct. 809, 88 L.Ed.2d 784 (1986). The court noted that § 504 only provides equitable relief. Therefore, allowing a § 1983 remedy would effectively circumvent the Rehabilitation Act's remedial framework.[3] *Id.* at 791. On appeal, the Eleventh Circuit affirmed the district court's dismissal of the Rehabilitation Act claim but on different grounds. *Manecke v. School Bd.,* 762 F.2d 912, 922–23 (11th Cir.1985), *cert. denied,* 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986). The court of appeals simply found the plaintiffs failed to allege a violation of § 504 and, therefore, the court did not address the district court's finding that a § 1983 "laws" claim could not be based on § 504 of the Rehabilitation Act. *Id.*

Arguably, in the Eleventh Circuit, the Rehabilitation Act may not be the basis of a § 1983 "laws" action. *But see Christopher N. v. McDaniel,* 569 F.Supp. 291, 298 (N.D.Ga.1983) (noting "[t]his court is inclined to rule that a claim under § 1983 is generally sustainable in conjunction with Section 504 [yet] plaintiff has not clearly established a claim under § 1983."). However, "[t]he burden to demonstrate that Congress has expressly withdrawn the [§ 1983] remedy is on the defendant." *Golden State Transit,* 493 U.S. at 107, 110 S.Ct. at 448. Because MMC has neither raised this issue nor met its burden, and since summary judgment on the § 1983 claim will be granted on other grounds below, this Court declines to resolve this issue.

### Action Under Color of State Law

■ For a § 1983 claim to stand, the violation of the federal right must occur under "color of state law." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised pow-

*wick Memorial Hosp.,* 864 F.2d 117 (11th Cir. 1989).

**3.** This Court's finding below regarding the availability of compensatory damages for a claim under § 504 of the Rehabilitation Act conflicts with the district court's assumption in *Manecke*

that only equitable relief is available. The *Manecke* district court's underlying rationale, however, that § 504 of the Rehabilitation Act creates a comprehensive enforcement scheme, is unaltered.

er 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). "The statutory 'under color of law' requirement is equivalent, although not identical, to the constitutional doctrine of state action." *Cobb v. Georgia Power Co.,* 757 F.2d 1248, 1250 (11th Cir.1985) (citing *Lugar,* 457 U.S. 922, 102 S.Ct. 2744). "Where a private party acting either jointly with or through state officials becomes so allied with the state as 'to characterize that party as a "state actor" for purposes of the Fourteenth Amendment,' the private party is held to have acted under color of state law." *Cobb,* 757 F.2d at 1250 (quoting *Lugar,* 457 U.S. at 941, 102 S.Ct. at 2756).

In the present case, MMC alleges that as a private hospital, it was not a state actor and, therefore, a § 1983 claim is unavailable. In contrast, Kraft contends that MMC's close connection with the Chatham County Hospital Authority ("CCHA"), a statutorily created entity, results in a "symbiotic relationship" between the two and, thus, sufficient state connection exists. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3). Kraft bases this connection on several different factors. In particular, the lease agreement between MMC and CCHA imposes a number of mutual obligations. Under the lease, among other obligations, MMC must: (1) maintain the hospital as a nonprofit entity; (2) change its rates only in accordance with its nonprofit motive and notify CCHA prior to rate changes; (3) permit CCHA to conduct an annual audit of MMC's books; (4) deposit accounts receivable and revenue receipts into a specified revenue fund; (5) disburse funds based on a set priority (*i.e.,* first pay into sinking funds to retire revenue certificates, then cover MMC's operating expenses, then pay reasonable operating expenses requested by CCHA); and, (6) obtain CCHA's agreement, not to be unreasonably withheld, for issuance of revenue anticipation certificates. Kraft also asserts that half of CCHA's Board of Trustees are also members of MMC's Board of Directors for 1992. (Suppl. to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3). Finally, Kraft alleges that MMC's receipt of funds under the Hill–Burton Act implicates the federal and state government sufficiently to alter MMC's acts into state action.

In contrast to other Eleventh Circuit cases where a hospital's actions were found to constitute state action, Kraft is not suing the statutorily created county hospital authority. *See, e.g., Faucher v. Rodziewicz,* 891 F.2d 864 (11th Cir.1990); *Wofford v. Glynn–Brunswick Memorial Hosp.,* 864 F.2d 117 (11th Cir.1989); *Gilbert v. West Ga. Medical Ctr. Auth.,* 629 F.Supp. 738 (N.D.Ga.1985), *aff'd,* 784 F.2d 402 (11th Cir.1986); *Richards v. Emanuel County Hosp. Auth.,* 603 F.Supp. 81 (S.D.Ga.1984). Instead, in accordance with Georgia law establishing the county hospital authorities, CCHA has entered into an agreement with MMC, a private corporate entity. *See Richmond County Hosp. Auth. v. Richmond County,* 255 Ga. 183, 336 S.E.2d 562 (1985) (recognizing authorization, pursuant to O.C.G.A. § 31–7–75(7), for Richmond County Hospital Authority to enter into lease with private entity to operate hospital). There is not, in fact, a dispute over whether MMC is a private entity. Kraft does not challenge MMC's classification as a private entity, but instead argues the "symbiotic relationship" between MMC and CCHA causes MMC's acts to constitute state action. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 3).

In *Greco v. Orange Memorial Hosp. Corp.,* 513 F.2d 873 (5th Cir.), *cert. denied,* 423 U.S. 1000, 96 S.Ct. 433, 46 L.Ed.2d 376 (1975), the former Fifth Circuit rejected the argument that a symbiotic relationship existed between Orange County and the private hospital.[4] The court found that the connection between the hospital corporation and the county was insufficient to

---

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit issued prior to October 1, 1981.

attribute to the state the hospital's policy prohibiting the performance of elective abortions. *Id.* at 882. In *Greco,* the lease agreement between the county and the hospital contained essentially the same provisions as found in the present case. The court noted that the lease obligated "the hospital corporation to serve the general public, to admit indigent patients, to abide by the provisions ·of the Hospital Survey and Construction Act, to provide the county auditor with a yearly financial report (and any other information requested), and to obtain county approval before disposing of hospital property." *Id.* at 881. Nevertheless, the court found these factors to be typical lessor-lessee provisions and insufficient to create a symbiotic relationship.

The court in *Greco* relied on the Supreme Court's holding in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). In *Jackson,* the Court rejected the argument that the extensive state regulation of a monopolistic utility converted the utility's conduct into state action. In finding that disconnecting a customer's service without a hearing was not state action, the Court noted "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* at 351, 95 S.Ct. at 453.

The Supreme Court has continued to impose a nexus requirement between the challenged action and the asserted connection to the state. *See, e.g., Rendell–Baker v. Kohn,* 457 U.S. 830, 841, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982) (finding even though private school had close connection to state because state funds constituted 90% of operating budget, "decisions to discharge [employees] were not compelled or even influenced by any state regulation" and, thus, not under color of state law); *Blum v. Yaretsky,* 457 U.S. 991, 1011, 102 S.Ct. 2777, 2789, 73 L.Ed.2d 534 (1982) ("That programs undertaken by the State result in substantial funding of the activities of a private entity is no more persuasive than the fact of regulation of such an entity in demonstrating that the State is responsible for decisions made by the entity in the course of its business.").

Despite the funding and regulatory connections, Kraft has failed to demonstrate an actual connection between her dismissal, the challenged action, and the state. The only connection between CCHA and MMC, regarding personnel decisions that Kraft cites, is a clause in the lease agreement whereby CCHA agrees to "cooperate with MMC in connection with MMC's leasing and operation of [the] Hospital, including assisting MMC in its relations with employees and suppliers." In the context of the entire lease, whereby MMC agreed to continue to employ all of the hospital employees who had previously been CCHA employees, such a cooperation clause would be expected. This does not, however, rise to the level of CCHA maintaining any authority in personnel decisions. There is no indication that the personnel decisions of the hospital are in any way influenced, compelled or regulated by the state. *See Nail v. Community Action Agency,* 805 F.2d 1500, 1501 (11th Cir.1986) (recognizing receipt of significant federal funds for Headstart Program, yet insufficient nexus to plaintiff's dismissal "where none of the specific personnel decisions are controlled by state or federal regulations"). This nexus is necessary to establish action under color of state law, an essential element of Kraft's § 1983 claim.

*Standard for Summary Judgment*

Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). Summary judgment is also proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its

burden. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The court should consider the pleadings, depositions and affidavits in the case before reaching its decision, Fed.R.Civ.P. 56(c), and all reasonable inferences will be made in favor of the non-movant. *Adickes*, 398 U.S. at 158–59, 90 S.Ct. at 1609. In the present case, because Kraft has failed to make a sufficient showing of the challenged action occurring under color of state law, an essential element to a § 1983 claim, summary judgment, consistent with above case law, will be granted for Defendant, MMC.

## II. *Compensatory Damages Under § 504 of the Rehabilitation Act*

■ Kraft contends her dismissal was in violation of § 504 of the Rehabilitation Act, and she seeks injunctive relief, compensatory damages and attorneys fees.[5] MMC, arguing compensatory damages are not available under the Rehabilitation Act, seeks to dismiss or strike the compensatory damages claim. The Supreme Court has recognized that an equitable action for backpay is available for claims of intentional discrimination under § 504 of the Rehabilitation Act, but the Court did not determine the "extent to which money damages are available under § 504." *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 630, 104 S.Ct. 1248, 1252, 79 L.Ed.2d 568 (1984). Although, in the Eleventh Circuit, claims under § 504 of the Rehabilitation Act have not allowed recovery of compensatory damages and have been limited to equitable remedies, *see, e.g., Lengen v. Department of Transp.*, 903 F.2d 1464, 1468 (11th Cir. 1990), recent Supreme Court case law, discussed below, appears to reverse this remedial limitation. *See infra* p. 792 (discussing *Franklin v. Gwinnett County Pub.*

*Schs.*, —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)).

Section 505(a)(2) of the Rehabilitation Act provides that the "remedies, procedures and rights set forth in title VI of the Civil Rights Act of 1964" apply to actions brought under § 504 of the Rehabilitation Act. 29 U.S.C. § 794a(a)(2). Successful plaintiffs under § 504 of the Rehabilitation Act are, therefore, entitled to the same damages as successful Title VI plaintiffs.[6] Accordingly, in determining whether Kraft is entitled to compensatory damages, this Court must look to the available remedies under Title VI and § 504 of the Rehabilitation Act.

The analysis of available remedies under Title VI must begin with the highly fragmented decision of *Guardians Ass'n. v. Civil Serv. Comm'n.*, 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983). In *Guardians*, black and Hispanic police officers brought suit asserting discrimination under, *inter alia*, Title VI due to disproportionate layoffs resulting from allegedly discriminatory examinations. The district court, finding discriminatory intent need not be proved under Title VI, granted relief for the plaintiffs. The court of appeals for the Second Circuit reversed the decision as to the Title VI claim, concluding proof of discriminatory intent was necessary. Although the Supreme Court was unable to establish a majority opinion, reading the various opinions of the Court, it is clear that five members concluded discriminatory intent is not a prerequisite to a Title VI claim. *Id.* at 584 n. 2, 103 S.Ct. at 3223 n. 2. Additionally, among the several opinions "at least five Justices would not allow *compensatory* relief to a private plaintiff under Title VI absent proof of discrimina-

---

**5.** Section 504 of the Rehabilitation Act, in part, provides:

No otherwise qualified individual with handicaps ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.... 29 U.S.C. § 794.

**6.** Title VI, upon which § 504 of the Rehabilitation Act was structured and is worded in essen-

tially the same manner, prohibits discrimination under federally funded programs. Title VI provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. 42 U.S.C. § 2000d.

ry intent." *Manecke v. School Bd.*, 762 F.2d 912, 921–22 n. 8 (11th Cir.1985) (emphasis in original) (citing *Guardians*, 463 U.S. at 607 n. 27, 103 S.Ct. at 3235 n. 27), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986). Therefore, even though the *Guardians* opinion indicates compensatory damages would be unavailable in a case of unintentional discrimination, in cases of intentional discrimination, the availability of compensatory damages was left unclear.

The Eleventh Circuit, attempting to interpret the *Guardians* holding, noted that "[a]lthough it seems clear that the judgment of *Guardians Association* precludes a cause of action for compensatory damages for *unintentional* discrimination, we believe the various opinions of a majority of the Justices simply leaves *open* the question whether compensatory damages for intentional discrimination may be sought." *Franklin v. Gwinnett County Pub. Schs.*, 911 F.2d 617, 621 (11th Cir. 1990), *rev'd*, —— U.S. ——, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). In *Franklin*, a high school student brought suit under Title IX, alleging sexual harassment by a teacher.[7] The Eleventh Circuit analogized the *Guardians* Title VI holding to the Title IX claim and found compensatory damages were not available. *Id.* at 622.

The Supreme Court, however, reversed the Eleventh Circuit's holding and, in so doing, established a strong argument that compensatory damages are available in the case of intentional discrimination under Title VI. Initially, in interpreting the earlier *Guardians* case, the Court stated that "a clear majority expressed the view that damages were available under Title VI in an action seeking remedies for an intentional violation...." *Franklin*, —— U.S. at ——, 112 S.Ct. at 1034, 117 L.Ed.2d at 220. Thus, the Court arguably refuted the Eleventh Circuit's finding that *Guardians* merely left the question "open".

In *Franklin*, the Court held that compensatory damages are available under Title IX, relying on the rule that "absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute." *Id.* The Court concluded Congress had not precluded the award of compensatory damages under Title IX. In so doing, the Court relied on Congress' passage of the Civil Rights Remedies Equalization Amendment of 1986, 42 U.S.C. § 2000d–7, which abrogated Eleventh Amendment immunity of the states under Title IX, Title VI, § 504 of the Rehabilitation Act and the Age Discrimination Act of 1975. *Id.*, —— U.S. at ——, 112 S.Ct. at 1036, 117 L.Ed.2d at 221. The Court noted Congress passed this amendment subsequent to the Court's earlier recognition of an implied action under Title IX. In passing the amendment, the Court reasoned, Congress failed to limit the available remedies against the states and, therefore, implicitly ratified the presumption that all appropriate remedies are available. *Id.*, —— U.S. at ——, 112 S.Ct. at 1038–39, 117 L.Ed.2d at 224. Congress' amendment and, thus, the Court's rationale, is equally applicable to the implied private causes of action under Title VI or § 504 of the Rehabilitation Act.

Kraft contends that, based on the *Franklin* holding, compensatory damages for cases of intentional discrimination are similarly available under Title VI and, therefore, available under § 504 of the Rehabilitation Act. Kraft's assertion is consistent with those courts that have addressed this issue. *McGregor v. Louisiana State Univ. Bd. of Supervisors*, No. 91–4328–H, 1992 WL 189489, at *4 n. 8, 1992 U.S. Dist. LEXIS 11787, at *14 n. 8 (E.D.La. July 24, 1992) (noting "the Court's reasoning in *Franklin* was broad enough to apply to Title VII [sic] actions as well as Title IX actions"); *Doe v. District of Columbia,*

---

7. Title IX, derived from Title VI and worded in essentially the same manner, provides in part: No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.... 20 U.S.C. § 1681.

**792**

796 F.Supp. 559, 571 (D.D.C.1992) (stating "[a]lthough the [Rehabilitation] Act does not specifically provide for the award of compensatory damages, this Court concludes that based on the Supreme Court's recent [*Franklin*] decision ..., compensatory damages are available under the Act"); *Tanberg v. Weld County Sheriff,* 787 F.Supp. 970, 972 (D.Colo.1992) (finding *Franklin* "provides dispositive analysis for determining whether compensatory damages are obtainable under the [Rehabilitation] Act" and that such damages are appropriate).

Additionally, Kraft's assertion is supported by the Supreme Court's earlier recognition that Congress intended the same remedies to be available under both Title VI and Title IX. *Guardians,* 463 U.S. at 594, 103 S.Ct. at 3228 (noting Title IX was derived from Title VI and "Congress understood that private remedies were available under Title VI, and ... Congress intended similar remedies to be available under Title IX."). Since the Court recognized in *Franklin* that compensatory damages are available for claims of intentional discrimination under Title IX, by implication, compensatory damages are similarly available under Title VI.

MMC argues that since the plaintiff in *Franklin* was a student suing a public high school, the remedies of backpay and reinstatement, available in an employment setting, would have been inappropriate. Although this is a persuasive distinction, based on the clear recognition by the Supreme Court and the Eleventh Circuit of the similarity between Title IX and Title VI, it would be disingenuous at this point to recognize that compensatory damages are available for claims of intentional discrimination under Title IX and not available under Title VI. *See, e.g., Franklin v. Gwinnett County Pub. Schs.,* 911 F.2d 617, 619 (11th Cir.1990) (stating "[h]ereinafter, we discuss Title VI and Title IX cases somewhat interchangeably, because we believe it is settled that analysis of the two statutes is substantially the same"), *rev'd,* — U.S. —, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). Accordingly, this Court finds that since it is now clear that compensatory damages are available for claims of intentional discrimination under Title IX, such damages are similarly available under Title VI and, consequently, under § 504 of the Rehabilitation Act. As such, Kraft is entitled to seek compensatory damages under § 504 of the Rehabilitation Act. MMC's motion to dismiss or strike the compensatory damages claim will be denied.

### III. *Request for Jury Trial*

Based on the above analysis, recognizing that Kraft is entitled to seek compensatory damages and is not limited to equitable remedies, MMC's motion to dismiss Kraft's request for a jury trial will be denied.

### CONCLUSION

For the foregoing reasons, MMC's motion for summary judgment is GRANTED for the § 1983 claim. MMC's earlier motion to dismiss the § 1983 claim is moot based on this summary judgment ruling. Additionally, MMC's motion to dismiss or strike the compensatory damages claim and MMC's motion to dismiss Plaintiff's request for a jury trial are both DENIED. The Clerk of Court is directed to enter an appropriate judgment.

SO ORDERED.